No. 10,015.

CITY OF NEW ORLEANS VS. THE GREAT SOUTHERN TELEPHONE AND
TELEGRAPH COMPANY.

An annual charge of $5 per pole upon the poles of a telephone company already established' imposed by a municipal ordinance as "a consideration for the privilege" is not a tax either on property or as a license and cannot be sustained as an exercise of the taxing-power.

It is not an exercise of the police power, as it involves no consideration of public order, health, morals or convenience.

A municipal ordinance granting to a particular company, authority to construct and maintain telephone lines on the streets, without any limitation as to time and for consideration stipulated, when accepted and acted on by the grantee by a compliance with all its conditions and the construction of a valuable and expensive plant, acquires thereby the features of a contract which the city cannot thereafter abolish or alter in its essential terms without the consent of the grantee; and the imposition of new and burdensome considerations is a violation thereof.

A proviso in the ordinance to the effect that " the *acts and doings* of the company *under* this ordinance shall be subject to any ordinance or ordinances that may be hereafter passed by the city." does not convert the grant into a mere revocable permit. On the contrary' it assumes that the ordinance is to continue in full force and effect, and recognizes the right of the grantee to do and to act under and in accordance with it, and only subjects such " acts and doings" to future municipal regulations not inconsistent with the ordinance itself.

APPEAL from the Civil District Court, for the Parish of Orleans. *Voorhies*, J.

*Walter H. Rogers*, City Attorney, and *Branch K. Miller*, Assistant City Attorney, for Plaintiff and Appellant.

*Bayne, Denegre & Bayne*, for Defendant and Appellee.

The opinion of the Court was delivered by

FENNER, J.   The defendant is the assignee and successor of the New Orleans Telephonic Exchange referred to in the following ordinance of the city of New Orleans, adopted February 18, 1879:

An ordinance authorizing the construction and maintenance of a telephonic telegraph line through the streets of the City of New Orleans.

SECTION 1.   Be it ordained by the City Council of the City of New Orleans, That the New Orleans Telephonic Exchange is hereby authorized to construct and maintain a line or lines of telegraphs through the streets of this city, the line or lines to be constructed along such streets, at such points, and in such manner as to the kind and position of the telegraph poles, the height of the wires above the streets, and in all other particulars, as the Administrator of the Department of Improvements of this city may direct.

*Provided, however*, that the said company shall connect their wires with the Mayor's office, Chief of Police's office, and fire alarm telegraph office, and place and keep telephones therein free of charge to the city, so that said telephones may be used in connection with all wires under the control of said company.

SEC. 2.   And be it further ordained, etc., That all the acts and

doings of said company under this ordinance shall be subject to any ordinance or ordinances that may hereafter be passed by the City Council concerning the same.

Under this ordinance defendant constructed and has since maintained telephonic lines through the streets, built according to the directions of the Administrator of Improvements, and with his approval, and has furnished the city with the free telephonic service stipulated, and has complied in all respects with the terms of the ordinance.

The plant established by defendant is expensive and valuable. The defendant pays a tax upon this plant as property, and also pays a license tax levied on its business.

In April, 1880, the General Assembly of the State passed Act No. 124, authorizing corporations formed for the purpose of transmitting intelligence by magnetic telegraph or telephone, to "construct and maintain telegraph, telephone and other lines along all State, parish or public roads or public works, and along and parallel to any of the railroads in the State, and along and over the waters of the State ; provided that the ordinary use of such roads, works, railroads and waters be not thereby obstructed, *and along the streets of any city, with the consent of the Council or Trustees thereof.*

The defendant having the prior consent of the city certainly came under the protection of this act as to the maintenance of its lines from the date of its passage.

In December, 1883, the City Council passed an ordinance to regulate and control the erection and maintenance of poles for supporting wires of the telephones within and on the streets, ways and public places of the city of New Orleans, " containing various provisions on the general subject, with none of which have we any present concern except the following : That " no poles shall be allowed to be erected, *or any existing poles be allowed to remain* in that portion of the city embraced by Jackson street, Elysian Fields, Roman street, and the Mississippi River, *except upon the payment of* $5 *per annum per pole for every such pole* erected, or *at present in use* within that section of the city  *  *  *   said payments to be *in consideration of the privilege and advantage of entering upon, using and permanently occupying the streets, ways and places of the city for private property,* and to be paid annually in advance, commencing January 1, 1884."

Defendant had 600 poles within the section designated, on which the sum of $3000 is claimed to be due, and the object of the present

action is to enjoin defendant from using or maintaining said poles for telephonic purposes, until payment thereof be made.

It is not pretended that the exaction claimed is a tax, either on property or as a license, or that it is an exercise of the taxing power in any respect.

The ordinance qualifies it as a price or consideration for the privileges enjoyed. It is not even alleged that defendant has ever consented or contracted to pay such consideration, and the attempt made to prove such consent was not only *ultra petitionem*, but the evidence offered for the purpose was manifestly insufficient and illegal, and was properly rejected.

There is, therefore, entire absence of any legal tie binding the defendant as a debtor for the amount claimed, and if the city were suing simply for a money judgment, the petition would set forth no cause of action.

The real relief claimed by the city, however, is found in the injunction prayed for, based on the theory that the provision of the ordinance referred to is a regulation or condition imposed upon the maintenance of the poles and exercise of the privileges which the city had the right to impose, and without compliance with which the defendant could not lawfully continue to maintain and exercise them.

The question for our determination is whether the city had the right to make such a regulation or impose such condition.

It is not seriously contended that the provision is a police regulation, and, indeed, such contention is silenced not only by the nature, but by the express terms of the provision itself, which qualify the exaction as a "consideration for the privilege." No consideration whatever of public morals, health or convenience is involved. It is not proposed to abolish the use of poles or to alter their location, construction or manner of use in any way, to subserve the public comfort. The simple requirement is the payment of a price, on payment of which the *status quo* continues, while, without such payment, it must cease. The case presents no feature of an exercise of the police power.

The only remaining question is, whether, after granting the defendant the authority to construct and to maintain its lines without limitation as to time, and with no other consideration than the furnishing of certain free telephonic facilities to the city; after the defendant has, at great expense, established its plant, and constructed its lines, and when it has fully complied with all the conditions imposed, the city can now exact this large additional consideration for the continued enjoyment of privileges already granted.

If the city can do this now, she could have done it the very day after the defendant had completed its lines, when it had incurred all the expense and before it had reaped a particle of return. If she can impose a charge of $5 per pole, she can, with equal power, impose one of $1000, and, for that matter, she could arbitrarily revoke the grant at her pleasure.

Either she is bound according to the terms of her proposition accepted and acted on by defendant or she is not bound at all.

Obviously, upon the clearest considerations of law and justice, the grant of authority to defendant when accepted and acted upon, became an irrevocable contract, and the city is powerless to set it aside or to interpolate new and more onerous considerations therein. Such has been the well recognized doctrine of the authorities since the Dartmouth College case, 4 Wheat. 518.

The main contention of the city, however, is that the second section of the ordinance robs it of the features of a contract and converts the authority granted into a mere revocable permit. The section is as follows: "That all the *acts and doings* of said company *under* this ordinance shall be subject to any ordinance or ordinances that may hereafter be passed by the City Council concerning the same."

The city's construction of this section is strained and unreasonable and conforms neither to its spirit or letter.

It is not conceivable that the grantee would have invested its means in such an enterprise, had it imagined that the term and conditions of its enjoyment of the privilege lay at the entire mercy of the city. If any such unreasonable intention lurked in the minds of the Council which passed the ordinance, the grantor, under familiar rules of construction, came under the obligation of expressing it clearly and unambiguously.

But what is it that is subject to regulation and control by future ordinances?

It is, " *the acts and doings of said company under this ordinance.*" This assumes that the ordinance itself is to continue in full force and effect, and certainly reserves no power to repeal, destroy or alter it in any of its essential features and considerations. It recognizes the right of the company to act and to do under and according to the ordinance, only subjecting such " acts and doings " to municipal regulations not conflicting with the ordinance itself.

We consider that the imposition of the additional and burdensome consideration here involved is not within the scope of the rights reserved.

Judgment affirmed.