\* THE CITY OF PHILADELPHIA, Respondent, v. THE POSTAL TELEGRAPH CABLE COMPANY and Another, Appellants.

*Police power — an ordinance for regulating and inspecting telegraph poles and wires — a tax and license fee imposed, if reasonable, is valid — interstate commerce.*

The city of Philadelphia imposed a license fee and charges for the regulation and inspection of the poles and wires upon each telegraph pole and mile of wire of certain telegraph companies, which existed in the streets of the city, and brought an action to recover the same, in which a judgment was recovered against the companies.

Upon an appeal by the companies from such judgment:

*Held*, that the license fee and tax were valid.

That the privilege granted by section 5263 of the United States Revised Statutes to telegraph companies to operate lines over a military or post road, did not exempt the company from taxation upon its property owned and used within a State.

That such a tax was not a restraint upon instruments of interstate commerce and communication, nor did it conflict with the fourteenth amendment of the United States Constitution forbidding a State to deprive any person of life, liberty or property without due process of law, or to deny any person the equal protection of the laws.

That regulations of such a nature were a proper exercise of the police power.

That the regulations were imposed under that power and were not for revenue purposes, and that the methods and basis adopted by the State of Pennsylvania in matters of ordinary taxation did not apply and need not be followed.

That whether the police power of regulation had been properly exercised by a city

---

\* Decided December, 1892,

might be determined by considering whether the terms of the ordinance, and the charges imposed under it, were reasonable.

That the evidence in this case tended to show that both were reasonable; and this being so the court would not interfere.

APPEAL by the defendants, the Postal Telegraph Cable Company and the Bankers and Merchants' Telegraph Company, from a judgment of the Supreme Court, entered against them jointly and severally in the office of the clerk of the city and county of New York on the 20th day of July, 1892, for $14,677.44 damages, and $1,988.59 costs, after a trial before a referee.

*R. S. Guernsey*, for the appellants.

*William McMichael*, for the respondent.

O'BRIEN, J.:

This action was brought by the City of Philadelphia to recover several annual license fees and charges imposed by city ordinances upon each telegraph pole and mile of wire in the streets of Philadelphia. The defendants conceded that plaintiff has power and authority to make and prescribe ordinances for the inspection and regulation of telegraph lines within the city limits, but deny that it has either power or authority to require the payment of any fee or charge therefor, or to charge for a license, or to make any special tax upon their property, or upon each pole or wire permitted within the city limits.

This restricts the contention to the question whether a charge for such regulation and inspection is valid, and whether such a charge is an interference with the interstate clause of the United States Constitution, or with the rights conferred on telegraph companies by the United States Revised Statutes (§ 5363) relating to telegraph companies and the post-office service.

The appellant contends that such a tax or claim is a restraint upon the instruments of interstate commerce and communication, which is placed solely in the hands of congress by the Constitution (art. 1, § 8, subs. 3, 18, U. S. Const.); that the United States Revised Statutes (§ 5263) grants to any telegraph company, complying with certain conditions, " the right to construct, maintain and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post roads of

the United States," etc.; and that such a tax would impair and destroy the right thus conferred.

In the case of *Western Union Telegraph Company* v. *Massachusetts* (125 U. S., 530), where the question was as to the right of the State to impose a tax upon the property of a telegraph company within its limits, it was held: " That the privilege conferred upon telegraph companies by the Revised Statutes (§ 5263) carries with it no exemption from the ordinary burden of taxation in a State within which they may run or operate lines of telegraph." And it was further held therein that a tax upon the property owned and used by the corporation within that State "is not forbidden by the fact of the acceptance on the part of the company of the rights conferred on telegraph companies by the Revised Statutes (§ 5263), nor by the commerce clause of the Constitution." In the opinion of the court in that case it was said: " While the State could not interfere by any specific statute to prevent a corporation from placing its lines along these post roads, or stop the use of them after they were placed there, nevertheless the company receiving the benefit of the laws of the State for the protection of its property and its rights, is liable to be taxed upon its real or personal property as any other person would be. It never could have been intended by the congress of the United States, in conferring upon a corporation of one State the authority to enter the territory of any other State and erect its poles and lines therein, to establish the proposition that such a company owed no obedience to the laws of the State in which it thus entered, and was under no obligation to pay its fair proportion of the taxes necessary to its support." (See, also, *American Rapid Tel. Co.* v. *Hess*, 125 N. Y., 641.)

With respect to the question of interstate commerce urged by appellant as affecting the right of the city to impose the charges, we think the authorities are abundant to show that, whether the charges in question come under the police or the taxing power, they do not offend against the interstate commerce clause. (*Leloup* v. *Port of Mobile*, 127 U. S., 640; *Gibbons* v. *Ogden*, 9 Wheat., 203; *Railroad Co.* v. *Fuller*, 17 Wall., 560; *Robbins* v. *Shelby County Taxing Dist.*, 120 U. S., 489; *W. U. Tel. Co.* v. *Pendleton*, 122 id., 347.)

Appellants further claim that it offends against the United States

Constitution, in that it conflicts with the provision in the fourteenth amendment that no State shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws, is disposed of by the case of *New York* v. *Squire* (145 U. S., 175).

It will thus be seen that we agree with the conclusion reached by the referee " that the State has power to impose taxes upon the property of such companies within the State under the laws of the State, and that a municipality, under its delegated powers from the State, can impose all lawful burdens upon the property of such companies situated within its corporate limits. Therefore, if these license charges upon poles and wires within the city limits should be held or found to be legally imposed by the State, they would not be in conflict with the provisions of this act of congress; or if the municipality, under its delegated power of ' regulation ' from the State or what is commonly known as ' police power,' should be found to have the right to make such ordinances and levy such imposts upon the poles and wires within its corporate limits of a company operating an interstate line, such ordinances and charges would not be in conflict with the act, as being neither on the general business of the company or an interference with such interstate business."

This view is consistent with the principle laid down in the case of *Leloup* v. *Port of Mobile* (*supra*), and kindred cases, which hold that " the property of a telegraph company situated within a State may be taxed by the State as all other property is taxed, but its business of an interstate character cannot be thus taxed." It was therein held that no State within which a telegraph company sees fit to establish an office can impose upon it a license tax or require it to take out a license for the transaction of its business; that the telegraphic communications carried on between different States are interstate commerce and within the power of regulation conferred upon congress, free from the control of State regulations, except such as are strictly of a police character.

A review, therefore, of the authorities will show that the true construction to be given to the Constitution of the United States, and the statutes passed relating to telegraph companies, are consistent with the right of the States to tax the property of corporations within their limits, and to subject them to regulations of a

police character, and that the United States Constitution and statutes prohibit the States from placing any charge or tax upon business of an interstate character, or interfering with, obstructing or destroying the working or business of such federal agencies. The record makes clear the fact that the plaintiff in no way, by the charge made, attempted to impose a tax upon business of an interstate character. The appellant, however, insists, if this conclusion should be reached, that the charge was, in effect, a tax which was illegally levied upon the property of the companies, contrary to the Constitution and laws of Pennsylvania, regulating the right and mode of taxation. In his argument he correctly presents the view which the courts of that State have adhered to in construing the method which should be adopted under the laws of that State in levying taxes, viz., upon an *ad valorem* principle, that is to say, that property is to be taxed at a uniform rate according to its value. If it had been shown that this was a tax, then there could be no question, but that this principle, not having been adhered to in levying the same would have rendered the charges in suit invalid.

We think, however, apart from the disclaimer of the respondent, it is clear that, in imposing the charge sought to be recovered in this action, the city of Philadelphia in no way intended to place a tax upon the business of the defendant companies, nor to impose a tax upon their property, but its claim is based upon its right, under police power, to levy such a charge.

The validity of license fees, or similar charges by a municipality under the police power, has been frequently asserted, and, so far as Pennsylvania and this State are concerned, the question must be regarded as settled in favor of their validity. As we have already endeavored to point out, charges thus imposed under the police power, and those imposed for revenue, proceed on an entirely different and distinct principle, and in cases where supposed police regulations come in question, the test must be whether the end in view is one within the regulative sphere, and whether the means are reasonably appropriate. An examination of the ordinances levying this charge, we think, will leave no room for misconstruction as to their true intent and purpose, showing clearly that such charges were for regulation, and not for revenue.

The ordinance of January 6, 1881, which was the first ordinance on the subject, begins as follows:

"AN ORDINANCE to regulate the erection and maintenance of telegraph poles in the corporate limits of the city of Philadelphia.

"*Whereas,* Great inconvenience and annoyance have been occasioned to property owners by the placing of telegraph poles in front of their premises; and

"*Whereas,* The lives and property of citizens traveling upon the public streets and highways have been imperiled by the erection and maintenance of inadequate or unsound telegraph poles thereon, so that it has become necessary to establish a system for the proper inspection of such poles and for the regulation of the erection and maintenance thereof."

And the ordinance of March 30, 1883, begins as follows:

"AN ORDINANCE to regulate the introduction and use of under-ground conduits, wires and cables for electrical conductors in the streets of Philadelphia," etc.

These ordinances, and the additional fact proved in the case that all charges were removed from such wires as were placed under ground, will show that the object sought was not the raising of revenue, but the reimbursement to some extent of the expense made necessary to the municipality in discharging its duty in furtherance of the public safety and convenience, as well as its co-ordinate duty to the defendants of protecting their property, by a proper regulation and inspection of overhead wires.

So far as this State is concerned, the case of *People* v. *Squire* (107 N. Y., 593) is authority for the view "that regulations of the character provided for in said acts are strictly police regulations, such as are within the legitimate authority of the legislature to delegate the exercise thereof to municipal corporations. That the right to exercise this police power is a governmental function which cannot be alienated, surrendered or abridged by the legislature by any grant, contract or delegation whatsoever."

So far as the State of Pennsylvania is concerned, the highest appellate court of that State has twice decided these very ordinances now brought in question to be valid. (*Mutual Union Tel. Co.* v. *Phila.* and *W. U. Tel. Co.* v. *Phila.,* 22 W. N. Cases, 39; *Chester*

v. *Phila., Reading and Pottsville Tel. Co.* [1892], Penn. S. C. Adv. Cases, 511; *Allentown* v. *W. U. Tel. Co.* [1892], id., 510.)

The description given in these cases of the condition of the streets confirm what the observation of every citizen makes evident, that lives and property can only be protected against the dangers threatened by overhead wires, by strict regulation and the most careful inspection.   In addition, we are referred to the following cases in Pennsylvania, distinctly holding that the plaintiff has power to exercise police regulation over telegraph lines.   (*City of Phila.* v. *W. U. Tel. Co.*, 2 W. N. Cases, 455, 460, *Southwark R. R. Co.*, v. *Phila.*, 11 Wright, 321; *Branson* v. *Phila.*, id., 332.)

It seems to us, therefore, that with the legal questions disposed of, all that remained was to determine whether the ordinances and the charges made were a proper exercise of the police power delegated to the plaintiff or possessed by it.   And the referee is sustained by the cases to which he refers in his opinion, in holding that whether there has been a proper exercise by the municipality of this power of regulation is to be determined by a consideration of the reasonableness of the terms of the ordinance and of the charges imposed. This the referee proceeded to do.

As to the expense entailed upon the city of Philadelphia it was shown that in order to have it thorough and effective, it was deemed essential to require a morning report called an " Electrical Report," to be made by every policeman on duty at night, of whom there are 1,526 receiving a salary of two dollars and fifty cents a day.   In addition it was shown that the appropriation for the police bureau in 1891 was over a million dollars, for the bureau of fire escapes over six hundred thousand and for the electrical bureau over one hundred and forty thousand dollars, and that these different bureaus were engaged and took part in enforcing the regulations and ordinances in question in the public interest.   It was also given in testimony by the chief of the fire bureau that if the wires were put under ground there would be a saving of one fire station, whose expense annually is about the amount of the total charges on all the companies.

Upon such testimony, having regard to the extensive area of a city like Philadelphia and the range of work and expense involved in the regulation of poles and wires, we think the referee was right

in holding that, contrasted with the large outlay made by the municipality, the amounts charged the defendants and sought to be recovered in this action are reasonable. We think that the Supreme Court (of Appeal) in the case of *Allentown* v. *Western Union Telegraph Company* (*supra*), in considering the particular charges in these ordinances, correctly defined the rule of law to be applied, viz.: "The amount of the license fee in such cases rests with city councils in the first instance, and only upon an abuse of their discretion is the court justified in interfering. We cannot say that discretion has been abused in this case or that the license fee is unreasonable.

It will thus be seen that we concur with the view taken by the referee as to the reasonableness of the charges imposed on the defendants. Indeed, we might well have allowed this judgment to stand upon the able opinion of the referee, which thoroughly discusses every question that has been presented upon this appeal. It would serve no useful purpose to go over the same ground, refer to the same authorities and draw the same conclusions as the referee has done. Though the question in principle is an important one, we do not regard it as either novel or difficult. An examination of cases in the United States Supreme Court and in the highest appellate courts of this State and Pennsylvania supports the legal principle invoked by the plaintiff, and the evidence adduced in this case sustains the conclusion of the referee favorable to plaintiff's right to recover.

In our opinion the judgment should be affirmed, with costs.

VAN BRUNT, P. J., and BARRETT, J., concurred.

Judgment affirmed, with costs.