## TEXARKANA GAS & ELECTRIC COMPANY v. CITY OF TEXARKANA.

Decided December 2, 1909.

**1.—City—Police Power—Grant of Franchise.**

While a city can not surrender that portion of its police power essential to the promotion of general welfare, it may bind itself by contract granting rights to public service corporations to make use of its streets and alleys, not amounting to nuisance. Such grant, on valuable consideration, accepted and acted on by a grantee observing its terms, confers a vested right on the latter which can not be impaired by the city imposing additional and more onerous terms.

**2.—Same—Electric Company—Tax on Poles.**

A city which had granted to an electric light company the right to erect poles in streets and alleys, which the latter had accepted, erecting its plant and furnishing free lights in the city public buildings in accordance with the conditions on which such franchise was granted, could not be required by ordinance, as a further condition, to pay to the city the sum of 50 cents annually for each pole so maintained. It acquired a vested right to maintain such poles on the conditions prescribed by its original contract.

Appeal from the County Court of Bowie County. Tried below before Hon. Joe Hughes.

*Glass, Estes, King & Burford,* for appellant.—The city had no authority by law to impose such a tax or license fee. City of Paris v. Sturgeon, 50 Texas Civ. App., 519; Pye v. Peterson, 45 Texas, 312; Davis v. Burney, 58 Texas, 364; Hoefling v. San Antonio, 85 Texas, 228; Bartlett v. Denison, 145 U. S. (L. ed. 36), p. 652; Hot Springs Elec. Light Co. v. Hot Springs, 67 S. W., 761.

The company had a vested right to maintain its poles on the terms originally granted it. Mayor v. Houston, 83 Texas, 555; Thomas v. Baker, 90 Texas, 167; Jumbo Cattle Co. v. Bacon, 79 Texas, 12; City of Detroit v. Detroit Citizens' St. Ry. Co., 184 U. S. (46 L. ed.), 607; City Railway Co. v. Citizens' St. Ry. Co., 166 U. S. (41 L. ed.), 1114.

*Rodgers & Dorough* and *F. M. Ball,* for appellee.—The fact that the assessment under the police power resulted in producing revenue, which is to be paid into the treasury for the use of the Street and Bridge Fund, does not deprive the assessment of the character of a police regulation. Brown v. City of Galveston, 97 Texas, 1; City of St. Louis v. Western U. Tel. Co., 148 U. S., 93; Postal Tel. Co. v. City of Baltimore, 156 U. S., 211.

HODGES, ASSOCIATE JUSTICE.—The appellant is a private corporation; is now and has been for many years engaged in the business of operating an electric street-car system and an electric light plant in the city of Texarkana, Texas, for the purpose of furnishing to the residents of said city street-car service and electric lights. In carrying on its business it has erected and uses poles and wires placed and strung in the manner usually adopted in such cases. In the early part of 1907 the city of Texarkana procured from the Legislature a special charter. Prior to that time and since 1874 it had existed as a municipality incorporated under the general laws of the State. On February 10, 1908, the city adopted an ordinance entitled, "An ordinance to regulate the placing of poles and stringing of wires thereon along, over and through the streets and alleys and other public highways of the city of Texarkana, Texas; providing for a license and a license fee upon every such pole, and providing for the collection of the same." It is then ordained, first, "That any such person, firm, corporation or association owning, operating or conducting any of the following public service, business or engagements to or with the general public or offering to do so for public hire within the corporate limits of the said city or partially within and partially without the corporate limits of the said city, viz: Telegraph business, telephone business, or telegraph and telephone business, or electric light or electric street railway, or either or both, or any other business where electric wires are used and suspended on poles over, along or across any of the public streets, alleys or highways, within the said city, shall be and each is hereby required to pay to the said city for the use and benefit of the street and bridge fund a license fee of fifty (50c) cents

for each and every pole that is or may be owned by any such person, firm, corporation or association and occupying any street, alley or public highway or standing and erected thereon, and upon every said pole an annual license and license fee is here levied and assessed for the year 1908 and for each succeeding year thereafter." Then follow provisions intended as regulations governing the location of the poles upon the streets and alleys, their size and position, distance and height, and other details generally imposed by cities, and which it is not necessary to mention here more fully. The second subdivision is as follows: "That each and every person, firm, corporation or association, using wires and poles in the streets, alleys or highways, as aforesaid, shall annually before the 20th day of February of each year, file with the city council a certificate which shall be duly sworn to, correctly stating the number of poles owned by him or them within the said city, and it shall thereupon be the duty of the city council to charge the city tax collector with the sum of money equal to fifty (50c) cents for each and every one of said poles, and a violation of this section shall subject any such person, firm, corporation or association of persons conducting any of the public utilities hereinbefore stated and so violating it to the fine of twenty-five ($25) dollars and a penalty of fifteen ($15) dollars for each and every day that such violation shall exist. And provided further, that any failure by any person, firm, corporation or association to file said sworn statement setting forth the number of poles, or if the city council shall be doubtful of said affidavit correctly stating the number of poles, it may nevertheless have an inventory of the said poles made upon its own behalf and account, and such inventories to be made by the city engineer, who shall make the sworn report to the city council in writing when requested, and such report of said engineer shall be conclusive as to the facts therein recited, and the entries made upon the books of the tax collector by him and the charges against such tax collector shall be based upon the report of said city engineer when the report shall have been made by him. And each and every person, firm, corporation or association so using wires and poles as aforesaid that are now or may hereafter be placed in and along the said streets or alleys of the said city, shall pay to the city of Texarkana, Texas, to become a part of the street and bridge fund, annually, on or before the 10th day of March of each and every year, as a license and as a license fee, the sum of fifty (50c) cents for each and every pole so erected, maintained or used on said streets, alleys or highways within the said city by any such person, firm, corporation or association engaged in any of the foregoing mentioned public service, and the same shall be paid to the tax collector of the said city by the 10th day of March, of each year, and upon the failure of any such person, firm, corporation or association to make said payment annually on or before the 10th day of March, it shall be and is hereby made the duty of the city attorney to take cognizance of said failure and to proceed at once to the collection of the same and to the enforcement of this ordinance." On the 20th of February, 1908, the general manager of the appellant company, in compliance with the provisions of the foregoing ordinance requiring a report of the number of poles owned and used within the city limits, filed a

written report showing that appellant at that time owned and used 787 poles within the limits of the city, in the conduct of its business. This report, however, was made under protest, and, as stated therein, for the purpose of avoiding the penalties imposed by reason of the failure to make it. The appellant refused to pay the tax of fifty cents per pole, amounting to $391.50, which had been charged against it as a license fee under the provisions of the ordinance before mentioned, and this suit was instituted by the city to enforce its collection. As a defense the appellant alleged and proved upon the trial that some years before the granting of the special charter to the city of Texarkana, and while the latter was existing as a municipal corporation under the general laws of the State, it obtained from the city a franchise, or right, which authorized it to place and set its poles on the streets and alleys of the city, and that by virtue of that authority it had placed and set its poles on the streets and alleys, and was using and maintaining them in that position at the time the ordinance above mentioned was passed, and that the appellant was then and is now acting by virtue of the original franchise referred to. It was also shown that in the grant of the franchise claimed, the terms required the appellant to furnish free of charge electric lights for use in the city hall, firehouse and jail, and to furnish electric street lights at certain prices agreed on, and that no other license fees were therein exacted. It was further shown that the appellant has at all times complied with the terms and conditions imposed in the grant of the aforesaid franchise, and was in all things complying with the regulations made for its government in the exercise of that right.

The case was tried before the court without a jury, and a judgment rendered in favor of appellee for the full sum sued for. The correctness of that judgment is assailed upon the ground that the city had no authority to levy and collect a license fee of fifty cents per pole on the poles owned and used by the appellant along the streets and alleys of the city; that having theretofore granted to appellant the right to use and occupy the streets and alleys with its poles and wires for the purposes for which they were then being used, the city had no legal right thereafter to impose an additional burden or tax upon appellant for such use.

Counsel for the city do not contend that this ordinance should be sustained as a valid exercise of the power of the city to levy and collect taxes either upon property or occupations. They do not deny that as a measure for raising revenue it would be without authority. But they justify the provisions of the ordinance objected to upon the ground that it is a valid and proper exercise of the police power of the city, and refer to other portions of the ordinance which prescribe regulations governing the placing and maintaining of poles and wires, designating the size and quality of the poles that shall be used, and various other details intended to prevent any unnecessary obstruction of the streets and alleys. It must be conceded that the provisions of this ordinance, including the levy of the license fee, fall within the usual police powers of a municipal corporation having the right to regulate and control the use and occupancy of its highways by persons engaged in conducting public utilities, such as that of the appellant,

for private gain. But it does not follow from this that the exercise of some part of this police power may not under certain conditions be resisted upon the ground that it is an attempt to violate a vested right. The State, as the trustee for its citizens, is the ultimate holder and owner of a paramount authority to govern and regulate the use and occupancy of the public highways of the country. Municipal corporations succeed to this authority by virtue of the grants contained in their charters. 3 Abbott, Municipal Corp., sec. 913. When thus empowered, cities have the authority to grant to private parties the privilege of permanently occupying and using certain portions of their highways for the purpose of carrying on a business or enterprise furnishing some public service. In granting the right, or franchise as it is called, the city can impose conditions or charge a fee for the privilege given, which the applicant can accept or reject at his pleasure; but having accepted it, he takes the franchise subject to the conditions imposed, and must pay the consideration exacted. 3 Abbott, Municipal Corp., sec. 908. For without the consent of the municipality no one has any right to permanently use or occupy any portion of the public highways to the exclusion of others. The privilege is granted presumptively for the benefit of the public in securing the use of some agency of general utility; and when a consideration is received in return, it inures to the benefit of the community by going into the public treasury. It can therefore be readily seen that such transactions have many of the elements of a contract. The concession can not be regarded otherwise than as a valuable property right the revocation of which, after acceptance might entail serious damage. If the original franchise relied upon in this case was one which the city of Texarkana had the authority in the first instance to grant—one which public policy did not prohibit—it was a concession entitled to the protection generally accorded to vested rights secured by contracts. New York, L. E. & W. R. Co. v. Commonwealth, 153 U. S., 628, 38 L. ed., 846; City of St. Louis v. Western U. Tel. Co., 148 U. S., 93, 37 L. ed., 380; Louisville Trust Co. v. City of Cincinnati, 22 C. C. A., 334, 76 Fed., 296; 3 Abbott, Municipal Corp., sec. 297; Mayor v. Houston Ry. Co., 83 Texas, 555, 49 Am. St. Rep., 679, 19 S. W., 127; Jumbo Cattle Co. v. Bacon, 79 Texas, 12, 14 S. W., 840; City of Detroit v. Detroit R. Co., 184 U. S., 378, 46 L. ed., 607; City Ry. Co. v. Citizens' St. Ry. Co., 166 U. S., 558, 41 L. ed., 1114; 3 Abbott, Municipal Corp., secs. 896 and 919, and cases cited. There seems to be no question made as to the existence of that authority on the part of the city at the time it granted the franchise here claimed. To refuse protection to such concessions as this would expose valuable privileges purchased for a consideration, and extensive investments in property, to the arbitrary control of municipal governments, and thus permit the practical confiscation of valuable rights. It is no answer to the proposition stated to say that a city can not part with its police power over its highways, for within certain limitations this can be done, and when it is done the dominion can not be arbitrarily resumed when private rights have intervened and there has been no departure from the conditions imposed in making the concession, or those neces-

sarily implied by law. Broadly stated, the police power of the city is the power to govern, exercised either by restriction or compulsion, in promoting the general good of the people. Freund, Police Powers, pp. 2 and 3. While it is true that the city can not surrender that portion of its police power the exercise of which is essential to the promotion of the general welfare in protecting personal and property rights, it can make concessions by which the general welfare is promoted in securing the services of some public utility, and which does not involve the surrender of its necessary governmental functions. The fact that the city can not divest itself of the power to remove an unlawful obstruction from its highways does not prove that it may not grant to others the right to permanently use portions of those highways for a public purpose when such use does not amount to a nuisance. When the city of Texarkana granted the franchise to the appellant authorizing it, for the consideration named, to use and occupy the streets and alleys for carrying on its business, it did not surrender any governmental function or divest itself of any power necessary to protect its citizens against any unlawful invasion of their rights. It merely granted an easement upon the assumption that the service thereby secured would operate to the public benefit, and exhausted its power to demand a further consideration from appellant for the privilege conferred till the expiration of the grant. The terms upon which the right was granted fixed only the contractual relations of the parties; and the easement—that which the city could grant—became vested. If the city can at this time demand and collect from the appellant a further license fee as a rental or charge for the use of the streets, it puts the appellant in the attitude of being compelled to continue its use of a franchise upon terms which it might not have accepted in the beginning, or of surrendering its right and losing valuable improvements made upon the faith of the original grant. To permit the exercise of such authority would sanction the enactment of a measure violative of contractual obligations. None of the authorities cited by appellee support its contention further than to hold that the levy and collection of a license fee for the privilege of enjoying special rights upon the streets is an exercise of the police power. But none of them go so far as to say that this burden may be imposed upon one a second time for the same franchise after a previous grant.

We do not hold that the ordinance in question is invalid, but that those provisions which authorize the levy and collection of the license fee can not be enforced against the appellant company, for the reason that the appellee had previously granted the franchise under which it was occupying the streets of the city.

The judgment of the County Court is reversed and judgment here rendered for the appellant. All costs, both of this court and of the court below, are adjudged against the appellee.

*Reversed and rendered.*