[No. 13411. *En Banc.* July 17, 1917.]

PACIFIC TELEPHONE & TELEGRAPH COMPANY *et al.*,
*Appellants*, v. THE CITY OF EVERETT *et al.*,
*Respondents.*[1]

LICENSES — POLICE POWERS — REGULATING PUBLIC CORPORATIONS—
TELEGRAPH AND TELEPHONE COMPANIES—CHARGE FOR POLES. The provision in a city charter and ordinances requiring telegraph and telephone companies to pay a license tax of fifty cents for each pole maintained in use in any street or alley of the city cannot be sustained as a police regulation under the rule that a city has power to exercise control over the business and occupations of public corporations where reasonable necessity exists and charge the reasonable cost thereof, where there was no law, charter, or ordinance providing for any regulation or supervision over the property of such corporations; since the tax or charges must be reasonably commensurate with the expense of regulation and in pursuance of some general or special statute or ordinance prescribing the purposes to which they were applied.

SAME—"OCCUPATION TAXES"—WHAT ARE—CHARGE ON TELEGRAPH AND TELEPHONE POLES. A charge of fifty cents for each telegraph or telephone pole maintained for use in any city street or alley is not a tax upon occupations or business, under the rule in this state authorizing license taxes thereon in addition to general taxation; since it does not purport to be such, and the amount is not graduated by the amount of business done, nor is the sum fixed for the privilege of doing business.

CONSTITUTIONAL LAW—IMPAIRING OBLIGATION OF FRANCHISE—TELEGRAPH AND TELEPHONE COMPANIES. A charge of fifty cents for each telegraph or telephone pole maintained for use in any city street or alley is a rental which may be charged by the city for the privilege of using the streets only by way of contract; and after a city has granted a franchise to a telephone company granting it the right to use its streets and alleys for the erection of poles without exacting any charge upon the poles as a condition precedent to their maintenance, and the franchise has been accepted and acted upon, the city cannot, by charter or ordinance, exact such a charge, since 'it would be impairing the obligation of the contract in violation of the Federal constitution.

Appeal from a judgment of the superior court for Snohomish county, Alston, J., entered November 18, 1915, dis-

[1]Reported in 166 Pac. 650.

missing an action to restrain the enforcement of an ordinance, upon sustaining a demurrer to the complaint. Reversed.

*Hughes, McMicken, Dovell & Ramsey* and *Otto B. Rupp*, for appellants.

*Wm. A. Johnson*, for respondents.

FULLERTON, J.—On May 12, 1896, the city council of the city of Everett, by ordinance duly enacted, granted to the appellant Sunset Telephone and Telegraph Company a franchise, subject to certain conditions and regulations, empowering it to erect and maintain within the corporate limits of the city named a telephone and telegraph system. The ordinance, omitting its formal parts, is as follows:

"Section 1.—There is hereby granted to the Sunset Telephone and Telegraph Co., its successors and assigns, the right to erect poles and stretch thereon wires and similar conductors for the transmission of electricity within the city of Everett, and maintain the same for telephone and telegraph purposes.

"Section 2.—Such wires and conductors shall be stretched on said poles at a sufficient height as not to interfere with the free use of the streets and alleys by the public, and the poles shall be erected at the edge of the sidewalk and at such points as shall be designated by the city council, and shall keep the poles painted and substantially erected.

"Section 3.—The said grantee may make such excavations in the streets and alleys necessary for erecting and repairing such poles and wires, subject at all times to the rules, ordinances and resolutions of the city council, and the said council shall reserve the right to cause said grantee, its successors and assigns, to move the location of any pole, wire and conductors wherever it deems the public interest shall require the location elsewhere having due regard to the equities of the parties concerned; the expense of such removal to be borne and paid for by the grantee.

"Section 4.—The wires and conductors shall be promptly [properly] insulated, and carefully and firmly fastened, so as not to come in contact with any object, and whenever the surface of the streets or alleys shall be broken by any excava-

tion or repairs, the grantee shall immediately restore same to its proper condition.

"Section 5.—Whenever any person has obtained permission from the city to move any building or structure, said grantee shall upon twenty four hours notice in writing, raise or remove wires or conductors to permit the free passage of such building and upon refusal of grantee to make compliance of such notice, the street commissioner shall, upon proof of such notice, raise such wires or conductors at the expense of the grantee.

"Section 6.—The grantee shall not charge its patrons for putting in its telephones and shall never charge monthly rentals in excess of rentals charged by grantee in any city of like population on Puget Sound but nothing shall prevent the grantee requiring its patrons to pay at least three months in advance from first connecting such telephones.

"Section 7.—Nothing herein shall be construed to prevent the city of Everett and its proper authorities from sewering, guttering, or improving its streets and alleys and for that purpose to require the grantee to remove its poles, wires and connections to conform thereto and facilitate the same; and nothing herein shall be construed to grant to grantee, its successors and assigns, an exclusive right to erect and maintain its poles, wires, conductors and connections for the purpose specified herein;

"Section 8.—The grantee, its successors and assigns, is hereby given permission to place all or any of its wires underground at any time, and when the city of Everett has grown to a population of twenty-five thousand the wires of said grantee must be placed underground within such limits as may be deemed reasonable by the council. The grantee in doing any underground work is to carry out the same in expeditious and workmanlike manner subject to the ordinance and police regulations of the city of Everett.

"Section 9.—In consideration of the rights herein granted, the city of Everett shall have the right to suspend and maintain on the poles of the grantee, its successors and assigns, all wires which it may require for fire alarm and police telegraph purposes.

"Section 10.—The grantee shall within thirty days from the adoption of this ordinance file with the city clerk its acceptance of this franchise which is granted subject to its conditions.

"Section 11.—The grantee shall furnish all telephones required for the city's use at the rate of two thirds the price charged private individuals, and in no case to exceed the charge of two dollars and sixty-five cents per month for each telephone required for the city's use.

"Section 12.—The right herein granted shall continue to be in force for twenty-five years from and after the passage of this ordinance.

"Section 13.—The failure of the grantee to comply with the provisions herein shall operate as a forfeiture of the rights herein granted."

Within the time limited by the ordinance, the grantee named therein filed with the city clerk its acceptance of the franchise granted, and thereafter, at great expense to itself, installed within the city a telephone and telegraph system, during the course of which it erected a large number of poles on the streets and alleys of the city along which it stretched wires for the transmission of electricity. Subsequent to the installation of the plant, the grantee leased the same to its co-appellant The Pacific Telephone and Telegraph Company, which is now operating the same. The companies have at all times complied with the terms and conditions of the ordinance; their property within the city of Everett has been regularly assessed for state, county, school, and city taxes on an *ad valorem* basis as prescribed by the state constitution, which taxes it has duly and regularly paid.

The city of Everett, while a city of a lesser class at the time of the granting of the franchise mentioned, subsequently so far increased in population as to be entitled to become a city of the first class, with the privilege of framing its own charter. On April 16, 1912, advantage was taken of the privilege, the city framing and adopting a charter in accordance with the authorization found in § 10, art. 11, of the state constitution. Section 148 of the charter so adopted reads as follows:

"A minimum tax of fifty cents per annum shall be levied and collected upon each telegraph, telephone, electric light or

other pole in or upon any street, alley or other public place of the city of Everett: Provided, that this section shall not apply to metal poles supporting cluster lights."

On May 4, 1915, acting under and in pursuance of the foregoing provision of the charter, the city council of the city of Everett enacted the following ordinance No. 1654 (formal parts omitted):

"Section 1. That it shall be the duty of every person, firm or corporation maintaining or using any telegraph, telephone, electric light or other pole in or upon any street, alley or other public place in the city of Everett to pay to the city treasurer of the city of Everett on or before the first day of July, 1915, and on or before the first day of July of each and every year thereafter, a license tax of fifty cents for each pole so maintained or used, and secure a license to so maintain such pole or poles; provided, that this section shall not apply to metal poles supporting cluster lights; and provided, further, that if two or more persons, firms or corporations are using the same pole, the person, firm or corporation owning or leasing such pole shall pay the license tax herein provided for.

"Section 2. That upon the payment of such tax as herein provided, to the city treasurer of the city of Everett, said treasurer shall issue a receipt therefor, and upon the presentation of such receipt to the city clerk of said city, said clerk shall issue to said person, firm or corporation paying such tax a license to maintain the pole or poles for which such license tax is paid, for the year for which such tax is paid.

"Section 3. The city council of the city of Everett shall not issue a permit to erect any pole or poles in or upon any public street, alley or other public place within the city of Everett to any person, firm or corporation who has not paid the license tax as herein provided for.

"Section 4. If any person, firm or corporation fails to pay the license tax herein provided for, the city of Everett may bring suit to recover the same, in the superior court of Snohomish county.

"Section 5. Any person, firm or corporation, who violates any of the provisions of this ordinance, shall, upon conviction, be punished by a fine of not to exceed one hundred ($100) dollars, or by imprisonment in the city jail for a period of thirty (30) days, or by both such fine and imprisonment, and

each day that any person, firm or corporation shall continue to violate or fail to comply with any of the provisions of this ordinance, shall be deemed and considered a separate offense."

The city thereafter threatened to enforce the provisions of the ordinance, whereupon the present action was begun to enjoin it from so doing. The complaint of the appellants, after appropriate allegations setting forth the foregoing facts, further alleged that there is no statute of the state of Washington, provision of the charter, or ordinance of the city of Everett authorizing or providing for the inspection of poles such as the plaintiff's poles are; that no inspection of such poles has ever been made by the city of Everett, and that the ordinance was not passed with a view of or for the purpose of regulating the plaintiff's business or property, but for revenue purposes only; the charge being one of rental for the use by plaintiffs of the space occupied by the poles in the streets, alleys and other public places of the city of Everett. It was further alleged that the charge of fifty cents per pole was excessive considered as rental for the spaces occupied, and that the charter provision and ordinance violated the clause of the state constitution requiring an equal and uniform rate of assessment and taxation, and the clauses of the state and Federal constitutions which prohibit the passage of a law impairing the obligation of a contract or which deprive a person of his property without due process of law.

A general demurrer to the complaint was interposed, which the trial court sustained. The plaintiffs thereupon elected to abide by the complaint, and appeal from the judgment of dismissal which followed.

Before passing to the specific contentions of the parties, there are certain general principles suggested by the record which it may be well to recall to mind. It is settled law that a municipality has power to exercise local governmental supervision over the business of a public corporation in so far as such business is carried on within its corporate boundaries, and may charge the reasonable cost thereof to the corpora-

tion. This it may do under its police powers, in the interest of the public health, safety, or convenience, notwithstanding it may have granted the corporation a franchise to conduct such business therein. There are, of course, limitations upon the exercise of the power arising from the conditions of the particular case, but the power itself is undoubted and may be exercised whenever a reasonable necessity exists therefor. Dillon, Municipal Corporations (5th ed.), p. 2074; *Atlantic & P. Tel. Co. v. Philadelphia*, 190 U. S. 160; *Western Union Tel. Co. v. New Hope*, 187 U. S. 419; *Postal Tel. Cable Co. v. Taylor*, 192 U. S. 64; *People v. Squire*, 107 N. Y. 593, 14 N. E. 820, 1 Am. St. 893; *Philadelphia v. Postal Tel. Cable Co.*, 66 Hun 633, 21 N. Y. Supp. 556; *State ex rel. Webster v. Superior Court*, 67 Wash. 37, 137 Pac. 861, Ann. Cas. 1913D 78, L. R. A. 1915C 287.

In this state it is well settled law, also, that license taxes may be levied upon businesses and occupations, notwithstanding the property employed therein may have been assessed for taxation in accordance with its value under the general taxing laws of the state; this, on the principle that such taxes are not taxes upon property but are taxes upon privileges. *Fleetwood v. Read*, 21 Wash. 547, 58 Pac. 665, 47 L. R. A. 205; *Stull v. DeMattos*, 23 Wash. 71, 62 Pac. 451, 51 L. R. A. 892; *State v. Ide*, 35 Wash. 576, 77 Pac. 961, 102 Am. St. 914, 67 L. R. A. 280; *In re Garfinkle*, 37 Wash. 650, 80 Pac. 188; *Oilure Mfg. Co. v. Pidduck-Ross Co.*, 38 Wash. 137, 80 Pac. 276; *McKnight v. Hodge*, 55 Wash. 289, 104 Pac. 504, 40 L. R. A. (N. S.) 1207; *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466; *Seattle v. King*, 74 Wash. 277, 133 Pac. 442.

It is another general rule that the grant of a franchise is in the nature of a contract, protected by the Federal constitution as such, and cannot be altered or amended during its life by the grantor to the detriment of the grantee by adding new conditions or burdens thereto. *Commercial Elec. Light*

*& Power Co. v. Tacoma,* 17 Wash. 661, 50 Pac. 592; *Peterson v. Tacoma R. & Power Co.,* 60 Wash. 406, 111 Pac. 338, 140 Am. St. 936; *Tacoma v. Boutelle,* 61 Wash. 434, 112 Pac. 661; *Minneapolis v. Minneapolis St. R. Co.,* 215 U. S. 417; *Hot Springs Elec. Light Co. v. Hot Springs,* 70 Ark. 300, 67 S. W. 761; *Texarkana Gas & Elec. Co. v. Texarkana,* 58 Tex. Civ. App. 109, 123 S. W. 213; *New Orleans v. Great Southern Tel. & Tel. Co.,* 40 La. Ann. 41, 3 South. 533, 8 Am. St. 502.

Inquiring into the nature of the charge here sought to be imposed, it seems clear that it is not a tax for the purpose of regulation. Neither the charter provision nor the ordinance provides for regulation, supervision, or police surveillance of the company's property in any form whatsoever. We know judicially that there is no general law requiring such supervision, and it is alleged in the complaint, and for the purposes of this action we must accept the allegation as true, that there is no ordinance of the city of Everett requiring such supervision. We have, therefore, nothing more than a charter provision declaring that a charge of a minimum amount shall be collected, and an ordinance providing for its collection. Such a charge cannot be sustained as a police regulation. License taxes or charges for this purpose do not differ from other forms of taxation in the respect that there must be a purpose to which they can be lawfully applied. They cannot be collected in anticipation of need. They must be reasonably commensurate with the expense of regulation, and this expense cannot be known even approximately until the nature of the regulation is ascertained and defined. In other words, they must be imposed in pursuance of some general or special statute or ordinance prescribing the purposes to which they are to be applied. In the language of the supreme court of the United States in *Postal Tel. Cable Co. v. Taylor, supra:*

"To uphold it [the ordinance] in such a case as this is to say that it may be passed for one purpose and used for an-

other; passed as a police inspection measure and used for the purpose of raising revenue; . . . It is thus to be declared legal upon a basis and for a reason that do not exist in fact."

It is equally clear that it is not a tax upon occupations or businesses. In the first place it does not purport to be such a tax. In the second place the amount charged is not graduated by the amount of the business, nor is a sum fixed for the privilege of doing business. This is made more apparent when it is remembered that the charge could be avoided entirely by the simple process of moving the poles against which the charge is aimed from the streets and other public places of the city to private property, while the business of the owners could be continued as before. *St. Louis v. Western Union Tel. Co.*, 148 U. S. 92; *Western Union Tel. Co. v. New Hope*, 187 U. S. 419.

What then is the nature of the charge? This question is answered in the case of *St. Louis v. Western Union Tel. Co.*, above cited. It was there said:

"And, first, with reference to the ruling that this charge was a privilege or license tax. To determine this question, we must refer to the language of the ordinance itself, and by that we find that the charge is imposed for the privilege of using the streets, alleys and public places, and is graduated by the amount of such use. Clearly, this is no privilege or license tax. The amount to be paid is not graduated by the amount of the business, nor is it a sum fixed for the privilege of doing business. It is more in the nature of a charge for the use of property belonging to the city—that which may properly be called rental. 'A tax is a demand of sovereignty; a toll is a demand of proprietorship.' *State Freight Tax Case*, 15 Wall. 232, 278. If, instead of occupying the streets and public places with its telegraph poles, the company should do what it may rightfully do, purchase ground in the various blocks from private individuals, and to such ground remove its poles, the section would no longer have any application to it. That by it the city receives something which it may use as revenue, does not determine the

character of the charge or make it a tax. The revenues of a municipality may come from rentals as legitimately and as properly as from taxes. Supposing the city of St. Louis should find its city hall too small for its purposes, or too far removed from the centre of business, and should purchase or build another more satisfactory in this respect; it would not thereafter be forced to let the old remain vacant or to immediately sell it, but might derive revenue by renting its various rooms. Would an ordinance fixing the price at which those rooms could be occupied be in any sense one imposing a tax? Nor is the character of the charge changed by reason of the fact that it is not imposed upon such telegraph companies as by ordinance are taxed on their gross income for city purposes. In the illustration just made in respect to a city hall, suppose that the city, in its ordinance fixing a price for the use of rooms, should permit persons who pay a certain amount of taxes to occupy a portion of the building free of rent, that would not make the charge upon others for their use of rooms a tax. Whatever the reasons may have been for exempting certain classes of companies from this charge, such exemption does not change the character of the charge, or make that a tax which would otherwise be a matter of rental. Whether the city has power to collect rental for use of streets and public places, or whether, if it has, the charge as here made is excessive, are questions entirely distinct. That this is not a tax upon the property of the corporation, or upon its business, or for the privilege of doing business, is thus disclosed by the very terms of the section. The city has attempted to make the telegraph company pay for appropriating to its own and sole use a part of the streets and public places of the city. It is seeking to collect rent."

Such a charge, however, is not necessarily void. A municipality can, as a condition precedent to the use of its property, exact of the user such terms and conditions as it may deem necessary to impose, whether the property the use of which is granted be held by it in its governmental or private capacity. Any person or corporation accepting the privileges granted must be held to have accepted them upon the conditions imposed, and if a part of these conditions be that the

acceptor of the privilege pay a fixed charge per pole for all poles it may erect in the public places of the city, the charge can be lawfully, collected.

But it does not follow that the city may grant a franchise to a corporation to use its streets and other public places upon terms mutually agreed upon, and then afterwards during the life of the franchise annex additional burdens thereto without the consent of the grantee inconsistent with the rights granted. While it may not surrender the right of regulation necessary to the public health and safety, or the general taxing power (Const., art. 7, § 4), it can make a valid and binding contract concerning the terms upon which the grantee may make use of public places; such a contract as cannot be changed or altered at the will of the city without the consent of the other party thereto.

Turning to the ordinance granting the franchise to the appellant corporation, it will be seen that the grant is made upon enumerated terms and conditions. The right to exact a charge upon the poles of the grantee as a condition precedent to their maintenance is not one of such conditions. It is therefore an additional burden which the city seeks to impose upon the right to use its streets which it has contracted may be used without such burden. This we hold the city may not do.

In *New Orleans v. Great Southern Tel. & Tel. Co., supra,* the precise question was presented. The court, after showing that the charge imposed was not a tax either for regulation or revenue, proceeded as follows:

"The only remaining question is, whether, after granting the defendant the authority to construct and to maintain its lines without limitation as to time, and with no other consideration than the furnishing of certain free telephonic facilities to the city; after the defendant has, at great expense, established its plant, and constructed its lines, and when it has fully complied with all the conditions imposed, the city can now exact this large additional consideration for the continued enjoyment of privileges already granted.

"If the city can do this now, she could have done it the very day after the defendant had completed its lines, when it had incurred all the expense and before it had reaped a particle of return.  If she can impose a charge of $5 per pole, she can, with equal power, impose one of $1,000, and for that matter, she could arbitrarily revoke the grant at her pleasure. Either she is bound according to the terms of her proposition accepted and acted on by defendant or she is not bound at all. Obviously, upon the clearest considerations of law and justice, the grant of authority to defendant when accepted and acted upon, became an irrevocable contract, and the city is powerless to set it aside or to interpolate new and more onerous considerations therein.  Such has been the well recognized doctrine of the authorities since the *Dartmouth College* case, 4 Wheat. 518."

The case of *Hot Springs Elec. Light Co. v. Hot Springs, supra,* is also in point.  The facts of the case and conclusion of the court are stated in the following language:

"This is an action by the city of Hot Springs against the Hot Springs Electric Light Company to recover a sum of money which the city claims of it for the use and occupation of certain portions of the public streets upon which the company has erected its poles for electric light purposes.  An ordinance of the city requires that each person, company or corporation erecting and maintaining any pole in the streets of the city for electric light, telephone, or certain other purposes shall pay to the city 50 cents per annum for each pole so erected and maintained.  We can agree with counsel for the city that it had the right to pass an ordinance of this kind requiring persons and corporations erecting poles in the streets for purposes mentioned in the ordinance to pay for that privilege, but it does not follow that the city can in that way affect rights already vested under valid contracts.  Now, the ordinance imposing the charge of 50 cents a pole was passed in 1896, but the poles of the defendant company were all erected prior to that date under an ordinance of 1887, giving the company the right to maintain an electric light plant and to erect poles along the streets and avenues, and to string wires thereon, for the purpose of lighting the city, for and during a period of twenty years.  This grant by the

city council, having been accepted and acted upon by the Electric Light Company, became, in effect, a contract between the city and the company, which cannot be abrogated without the consent of the company. Under this grant of the right to use the streets of the city for the erection of its poles, the company not only invested large sums of money in the erection of plant, poles and wires, but, relying on that ordinance, it has, for an agreed consideration, contracted with the city council to light the streets of the city for a period of ten years by furnishing lights at points in the city designated by the city council, and has agreed that upon a failure to furnish such lights it will forfeit and pay to the city $5 per day for each light it fails to furnish. All this was done before the passage of the ordinance imposing on the company a charge of 50 cents per year for each pole placed in the street.

"Now, a grant which has been accepted and acted upon by the grantee is a contract, within the meaning of the constitution of the United States, which forbids laws impairing the obligation of contracts. When, therefore, rights and franchises lawfully granted to either a person or corporation have been duly accepted, and valuable improvements have been made on the faith of such grant, it becomes, in effect, a contract, which cannot be impaired either by a law of the state or by an ordinance of a municipality. The rights and franchises granted can then neither be revoked, nor can they be diminished in value by the imposition of additional burdens upon their use and enjoyment. *Fletcher v. Peck,* 6 Cranch (U. S.) 87; *Dartmouth College v. Woodward,* 4 Wheat. (U. S.) 518; *New Orleans Gas Company v. Louisiana Light Co.,* 115 U. S. 650; *New Orleans Water Works Co. v. Rivers,* 115 U. S. 674; *Sioux City St. Ry. Co. v. Sioux City,* 138 U. S. 98; *St. Louis v. Western Union Tel. Co.,* 148 U. S. 92; *Burlington v. Burlington St. Ry. Co.,* 49 Iowa 144; 2 Beach, Contracts, § 1205; 3 Parsons on Contracts (8th Ed.), page 479; 15 Am. & Eng. Enc. Law (2d Ed.), 1049."

See, also, *Texarkana Gas & Elec. Co. v. Texarkana, supra; Sunset Tel. & Tel. Co. v. City of Medford,* 115 Fed. 202; *Boise Artesian Hot & Cold Water Co. v. Boise City,* 230 U. S. 84.

Our conclusion is that the charter and ordinance is invalid as creating a charge upon the appellants' poles, and that the court erred in sustaining the demurrer to the complaint.

The judgment is reversed, and the cause remanded with instructions to overrule the demurrer.

ELLIS, C. J., PARKER, MORRIS, MOUNT, MAIN, CHADWICK, and HOLCOMB, JJ., concur.