Argued January 5, reversed and remanded January 25, 1921.

# STATE *v.* STEIDEL.

(194 Pac. 854.)

**Jury — Opinion from Reading Newspapers not Necessarily a Disqualification.**

1. Whether an opinion has been formed from reading the newspapers which it will take evidence to remove is not a conclusive test of the qualification of a juror, the test under Section 123, Or. L., being whether he is in such a frame of mind as to enter on the trial prepared to form an impartial judgment from what he hears on the trial.

**Criminal Law—Ruling That Foundation for Impeachment of Witness was Insufficient Held Harmless.**

2. Ruling as to insufficiency of foundation for impeachment, if error, was harmless, where the testimony sought to be impeached related to an immaterial matter.

**Witnesses—Impeachment Only as to Material Matters.**

3. A witness can only be impeached on matters that are material to the issues.

**Assault and Battery—Identity of Policeman to Whom Defendant Gave Pistol Previously Taken from a Policeman Held Immaterial.**

4. In prosecution for assault and battery committed by defendant in taking pistol from policeman during policeman's fight with fugitive, testimony as to whether defendant gave pistol to such policeman on command of another policeman, or gave it directly to such other policeman, *held* immaterial.

**Criminal Law—Witnesses—Cross-examination of Defendant not Reversible Error in View of Defendant's Direct Testimony.**

5. Where defendant charged with assault and battery testified on direct examination that he was a landscape gardener by occupation, cross-examination as to how much of his time was devoted to work as secretary of the Labor Socialist party, *held* not ground for reversal, being proper cross-examination of defendant's direct testimony as to his occupation was proper, and being invited error, of which he cannot complain on appeal, if such direct testimony was improper.

**Assault and Battery—Defendant Held Entitled to Submission of Self-defense Issue in View of Evidence.**

6. In prosecution for assault and battery in taking pistol from a police officer during officer's fight with person being arrested, where there was evidence which would have warranted jury in finding that defendant did not know that one of men was a police officer, that during the rough-and-tumble fight the pistol had been discharged three or four times, that defendant honestly believed that

he was in danger of death or great bodily harm by the careless discharge of the pistol, the defendant was entitled to instructions submitting issue of self-defense, since, if defendant believed himself or others in danger of bodily harm, he had a right to take pistol, under Sections 1806 and 1898, Or. L.

**Assault and Battery—Defendant may Prove Self-defense Under Plea of not Guilty.**

7. In view of Section 1500, Or. L., defendant accused of assault and battery is not required to enter a plea of self-defense, but is entitled to prove self-defense under the plea of not guilty.

From Clatsop: James A. Eakin, Judge.

Department 1.

The defendant was indicted and convicted on a charge of assault and battery, and has appealed.

REVERSED AND REMANDED.

For appellant there was a brief over the name of *Messrs. Mathison & Mannix,* with an oral argument by *Mr. Joseph Mannix.*

For the State there was a brief over the names of *Mr. Miller E. McGilchrist,* Special Assistant Attorney General, and *Mr. Jasper J. Barrett,* District Attorney, with an oral argument by *Mr. McGilchrist.*

BURNETT, C. J.—The theory of the state is that a policeman of Astoria, Holder by name, was engaged in the arrest of a man named Swanson and pursued him into the front room of an establishment maintaining a cigar-store in the front room and pool-tables in the back room; and that Swanson resisted, and, while he and the officer were engaged in a struggle over a pistol which the policeman had drawn and had discharged three or four times, the defendant came in from the back room and interfered in the struggle, wrested the pistol from Holder, and beat him over the head with it. The theory of the defend-

ant is that he heard the shots, and, going into the front room, found two men engaged in a fight over a pistol; and that, not knowing Holder was an officer and believing there was great danger from the reck- less manner in which it was being handled, the pistol would be discharged and wound either him or the by- standers, he rushed in and jerked it from the grasp of Holder, without using any more force than was necessary to secure the weapon.

1. The defendant assigns as error the action of the court in permitting two jurors to serve at the trial who stated that they had read an account of the affray in the newspapers and had formed therefrom an opinion which it would require evidence to remove. It appears from the bill of exceptions that the de- fendant had exhausted all of his peremptory chal- lenges when one at least of the two jurors was called. One of them, having declared that all of the evi- dence he had was from reading the papers, said it would not give one side an advantage over the other. The other stated in response to questions by the court that he would lay aside the opinion derived from reading the newspapers and try the case as if he had never formed an opinion in regard to it. Having formed an opinion from reading the newspapers, which it would take evidence to remove, is not a con- clusive test of the qualification of a juror. Any man of ordinary intelligence will acquire some opinion re- specting any transaction related to him, and, not ex- pecting to have any further connection with the mat- ter, that state of his mind may be satisfactory to him until he hears something different. The question to be determined by the court is, not whether the juror is ignorant of the matter, but whether he is in such a frame of mind as to enter upon the trial prepared to

form an impartial judgment from what he hears on the trial. Section 123, Or. L., reads thus:

"A challenge for actual bias may be taken for the cause mentioned in the second subdivision of Section 121; but on the trial of such challenge, although it should appear that the juror challenged has formed or expressed an opinion upon the merits of the cause from what he may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the case impartially."

Among the latest decisions of this court on this subject is that in *State* v. *Humphrey,* 63 Or. 540 (128 Pac. 824), where the authorities are collated, and it is held, on substantially the same showing as in the present case, that no error was committed in overruling the challenge to the jurors.

2-4. It appears in testimony that, about the time the defendant took the pistol from Holder, another policeman appeared and, drawing his own pistol, compelled the defendant to surrender the one taken from Holder; whereupon the second policeman, Turner by name, arrested the defendant and took him to the police station. In cross-examining Turner, defendant's counsel questioned the witness about who took the pistol from Steidel. The witness said:

"He held it out in his hand, and I took it when he held it out, when the officer—

"Q. That is, you took it away from him?

"A. No. I didn't."

Then he testified that Steidel handed the gun to Holder and later on said, "I guess so, he might have laid it down." He further stated that he himself never had the gun until he got close to the police station. Further, on cross-examination, after Turner

had admitted meeting a blacksmith named Swenson at the station when Steidel was taken there, defendant's counsel asked him this question: "Didn't you tell him at that time and place, that, when you came in there, Steidel had given you the gun?" The witness answered: "No, sir; I told him nothing about the case." Having called Swenson for the purpose of impeaching Turner, the court held that the foundation for the impeachment of Turner had not been sufficiently laid, and refused to allow Swenson to testify. If this be error, it is immaterial. A witness can only be impeached on matters that are material to the issues. The evidence disclosed by the bill of exceptions is plain, to the effect that the defendant gave up the pistol at the command of officer Turner. Whether he surrendered it directly to Turner or to Holder, who was standing there, is utterly immaterial. There is no assignable error on this point.

5. During his examination in chief, in response to questions by his counsel the defendant testified that he was by occupation a landscape gardener. On cross-examination he was first asked how much time he had devoted to distributing radical and revolutionary literature during the last year or so, and how much time he had been giving the Socialist party as its secretary. The court sustained the objections of defendant's counsel to these questions, but permitted the witness to answer this question: "Since you have been in Astoria have you, or have you not, been occupied at least part of that time with the Socialist or so-called Labor Socialist party?" The witness answered: "No, sir; I know—" At this point his counsel interposed an objection, which was overruled, and the defendant then answered:

"The party I belong to is known as the Socialist Labor party. They are not occupying anybody—the work is done voluntary and they are not paying anything, and I was at one time secretary of that organization."

Over his counsel's objections he was asked, "Do you have charge of the reading-room down here on Ninth Street?" and he answered, "I have not got no charge, no more there than any other man belongs to that organization." It is, of course, true that at law the defendant was neither to be praised nor punished for his political opinions or for his connection with any political party. Nor does the fact of his being a landscape gardener condemn or exonerate him in the trial of the issue upon the indictment. His occupation, however, was injected into the case by his own counsel, evidently for the purpose of creating a favorable impression with the jury. He cannot complain, therefore, if he is cross-examined upon the same subject with a view of replacing that impression with an unfavorable one. He might have answered the interrogatories mentioned by a simple affirmative or negative, as the truth might be. It was his own fault in descanting upon his connection with his party. Granting that it was proper for the defendant to inform the jury that he was a landscape gardener, the cross-examination was germane and hence admissible. Otherwise this matter constitutes invited error, profiting the defendant nothing on appeal.

In several forms the defendant made timely requests of the court to instruct the jury on the doctrine of self-defense in his behalf. In substance, without repeating all of them in detail, he requested the court to charge the jury that although Holder was a police officer, yet if this fact was unknown to the defendant

without the fault of the latter, and Holder was firing a loaded revolver in such a reckless manner as might inflict upon the defendant great bodily injury, the defendant, if he believed it necessary for his own protection or to prevent great bodily injury to himself or others, acted as a reasonably prudent man and struck Holder with the pistol through a mistake of fact, without defendant's fault, as to Holder's position, it would be an act of the defendant in self-defense, and the duty of the jury would be to find him not guilty. All of the requested instructions on self-defense were refused. On the contrary, the court said to the jury:

"The defendant has not pleaded self-defense in this case. There is no claim on his part that he was acting in self-defense. The only claim is that he was acting in the character of a peacemaker to stop the fight which he claims he supposed was between two frequenters of the establishment and that he did nothing more than was necessary to take the gun from the parties and prevent them from further use of it."

6. In Section 1806, Or. L., it is said that:

"Resistance to the commission of a crime may be lawfully made by the party about to be injured or by any other person in his aid or defense—to prevent a crime against his person. * * "

As against the commission of a crime one may defend not only himself, but others as well, under the authority of this section. Section 1898, Or. L., is in these words:

"If any person shall, in the commission of an unlawful act, or a lawful act without due caution or circumspection, involuntarily kill another, such person shall be deemed guilty of manslaughter."

As indicated above, the defendant was in a place of public resort where he had a right to be. Presented before him was a rough-and-tumble fight between two

men over a pistol which had been discharged three or four times. He was ignorant that one of them was an officer endeavoring to make an arrest. If he honestly believed from these circumstances, as he saw them, that he was in danger of death or great bodily harm by the careless discharge of the pistol, and acted as a reasonable man would in his situation, he would have a right to take such steps as were fairly necessary to avert the impending danger. We do not say that these are the facts. We do say, however, that there is evidence in the record which would authorize the jury to find such to be the facts. Under these circumstances, the defendant is entitled to instructions covering his theory of the case.

Self-defense is not necessarily based upon actual combat between the defendant and the individual producing the situation of danger which he would quell. Nor is it requisite to show that the one creating the situation of danger had an intention thereby to commit a crime. A toddling child, incapable of forming a criminal intent, might make it very dangerous for a bystander, if armed with a loaded pistol. It would be unreasonable to say that the bystander could not act in self-defense and disarm the child. So, in the present juncture, if the policeman, not known as such to the defendant, was recklessly firing his pistol, under conditions outlined in Section 1898, Or. L., *supra,* the defendant would have a right to take reasonable means to avert the danger to himself or the other bystanders in like peril.

7. It is not necessary to enter a plea of self-defense. There are but three kinds of pleas to an indictment, namely:

"(1) Guilty; (2) not guilty; (3) a former judgment of conviction or acquittal of the crime charged,

which may be pleaded either with or without the plea of not guilty'': Section 1500, Or. L.

Under the plea of not guilty, the defendant is entitled to prove self-defense. And if there was any evidence on that subject he was entitled to proper instructions on that branch of the law.

For this reason the judgment must be reversed, and the cause remanded for proceedings not inconsistent with this opinion.          REVERSED AND REMANDED.

McBRIDE, BEAN and HARRIS, JJ., concur.