[No. 24296.   *En Banc.*   April 21, 1933.]

PUGET SOUND POWER & LIGHT COMPANY, *Appellant,* v.
THE CITY OF SEATTLE, *Respondent.*[1]

*Todd, Holman & Sprague* and *Clarence R. Innis,* for
appellant.

*A. C. Van Soelen, Walter L. Baumgartner,* and *C. V.
Hoard,* for respondent.

BLAKE, J.—This is a companion case to *Pacific Tele-
phone & Telegraph Co. v. Seattle, ante* p. 649, 21 Pac.
(2d) 287, and, like that case, is here on appeal by
plaintiff from a judgment of dismissal after a demurrer

[1]Reported in 21 P. (2d) 727.

to the amended complaint had been sustained. The assignments of error are:

"(1) The court erred in sustaining respondent's demurrer to appellant's amended complaint.

"(2) The court erred in dismissing appellant's first cause of action.

"(3) The court erred in dismissing appellant's second cause of action.

"(4) The court erred in failing to hold that the enforcement of the ordinance as to appellant would contravene article I, § 10, and the fifth and fourteenth amendments to the constitution of the United States, and article I, §§ 3, 14 and 16, and §§ 5 and 9 of article VII of the constitution of the state of Washington."

The following provisions of ordinance No. 62,662, in addition to those set out in the opinion in the *Telephone Co.* case, are pertinent to the questions raised by the appellant in this case:

"Section 5. . . .

"(c) Upon every person engaged in or carrying on the business of selling or furnishing electric light and power a fee or tax equal to three per cent. (3%) of the total gross income from such business in the city during his fiscal year next preceding the tax year for which the license is required; provided, however, that the minimum fee or tax shall not be less than Two Hundred Fifty ($250.00) Dollars per tax year.

"Section 6. City of Seattle, Subject to Tax: Subdivisions (b) and (c) of Section 5 shall, so far as permitted by law, be applicable to the city of Seattle, except that said city shall not as a taxpayer, be required to conform to the other provisions of this ordinance."

The appellant raises some twenty-seven objections to the ordinance, all of which were disposed of in the *Telephone Co.* case, with the exception of two. These are: (1) That the tax is in contravention of appellant's rights under its franchise from the city; and (2) that the tax is peculiarly discriminatory, unreasonable and confiscatory, as to it, by reason of the fact that the city,

in its proprietary capacity, is a competitor of appellant in the power and light business.

The fourteenth amendment of the state constitution provides: "The power of taxation shall never be suspended, surrendered or contracted away." This, however, does not answer appellant's first contention, since its franchise antedates the amendment. Whether or not the state or a municipality may barter away its taxing power is a question upon which the authorities generally are not in harmony. There are strong reasons why it should be held that it may not. *State v. Hannibal & St. Joseph R. Co.*, 75 Mo. 208; *Portland v. Portland Ry., Light & Power Co.*, 80 Ore. 271, 156 Pac. 1058.

For the purposes of this case, however, we do not find it necessary to pass upon that question, for, in any event, the intent to relinquish the power to tax must not only be clear but distinctly expressed. It is a doctrine that is indulged in no implications. The question is put and the rule concisely stated in *St. Louis v. United Railways Co.*, 210 U. S. 266, as follows:

"The theory, then, upon which the bill was framed and this case decided was that the city, having once fixed a price for the use of its streets, which the railway companies had agreed to pay, there was no right to impose a license tax upon the railway companies under the ordinance. . . .

"The principles involved in this case have been the subject of frequent consideration in this court, and while it can be no longer doubted that a state or municipal corporation, acting under its authority, may deprive itself by contract of the power to exercise a right conferred by law to collect taxes or license fees, at the same time the principle has been established that such deprivation can only follow when the state or city has concluded itself by the use of clear and unequivocal terms. The existence of doubt in the interpretation of the alleged contract is fatal to the claim of exemption."

No terms of appellant's franchise have been called to our attention which could be interpreted as a relinquishment by the city of any of its powers of taxation.

In principle, appellant's second proposition is akin to the first. The question is: Can the state's power of taxation be abridged or abrogated by estoppel? In the abstract, the question would seem to merit scant consideration; but the allegations of the amended complaint reveal a condition of unfair competition, created by the exaction of this tax from the appellant, which commands the careful attention of a court of equity.

The city, in its proprietary capacity, is in competition with appellant in the power and light business. The possible consequences to appellant, if it is subjected to an excise of three per cent on its gross revenues, while its competitor escapes the burden, are too obvious for discussion. Evidently having such consequences in mind, the city council, by virtue of § 6 of the ordinance, has undertaken to subject the city's power and light business to the tax imposed upon persons and corporations engaging in that business.

This is merely a more or less friendly gesture. The city has not allocated, and probably cannot allocate, any of the revenues of its power and light business to the payment of such a tax. Bonds have been issued in excess of $30,000,000 against the revenues from that business; and those bonds are a prior lien on the entire income from it—taking precedence even over operating charges. Conceding that the city's light and power revenues could be subjected to the tax, no machinery is set up in the ordinance to accomplish such an end. Furthermore, in making up its budget for 1932, no provision was made for the levy of general taxes to cover the excise provided for in the ordinance. So the problem must be met as though § 6 had been omitted from

the ordinance; as though the city had levied the excise on the appellant and exempted its own light and power business therefrom.

Conceding, for the sake of argument, that to be the situation, counsel for the city seek to sustain the tax against appellant under the doctrine that constitutional limitations on the taxing power do not prevent a reasonable classification of persons and occupations subject to the tax; and that a privately owned light and power business is subject to a different classification than one owned by a municipality—that the one may properly be subjected to the excise and the other exempted.

In passing, it is to be noted that the ordinance is a good faith exercise by the city of its power to impose excise taxes for the purpose of raising revenue. Some half dozen businesses enjoying peculiar privileges in and upon the streets of the city are included within its purview. The fact that it imposes a burden upon appellant not borne by the city in its competing business, is an incident and not the purpose of the ordinance.

The expediency of imposing excise taxes and the classification of persons and occupations affected is a legislative problem, so long as the exaction is not inherently oppressive and the classification is reasonable. As we have seen, in the case of *Pacific Tel. & Tel. Co. v. Seattle, ante* p. 649, 21 P. (2d) 721, the tax imposed by this ordinance is not inherently oppressive. The question here is whether the classification as between the appellant and the city, in its ownership in a proprietary capacity of a light and power business, is reasonable. In the case of *State Board of Tax Commissioners of Indiana v. Jackson,* 283 U. S. 527, 73 A. L. R. 1464, Mr. Justice Roberts said:

"The principles which govern the decision of this cause are well settled. The power of taxation is funda-

mental to the very existence of the government of the States. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. *Bell's Gap. R. Co. v. Pennsylvania,* 134 U. S. 232; *Southwestern Oil Co. v. Texas,* 217 U. S. 114; *Brown-Forman Co. v. Kentucky,* 217 U. S. 563. The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, *American Sugar Rfg. Co. v. Louisiana,* 179 U. S. 89, or if any state of facts reasonably can be conceived to sustain it. *Rast v. Van Deman & Lewis Co.,* 240 U. S. 342; *Quong Wing v. Kirkendall,* 223 U. S. 59. As was said in *Brown-Forman Co. v. Kentucky, supra,* at p. 573:

" 'A very wide discretion must be conceded to the legislative power of the State in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.'

"It is not the function of this Court in cases like the present to consider the propriety or justness of the tax, to seek for the motives or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the legislature if there are substantial differences between the occupations separately classified. Such differences need not be great. The past decisions of the Court make this abundantly clear.''

In the case of *South Carolina Power Co. v. South Carolina Tax Commission,* 52 Fed. (2d) 515, a statutory three judge court applied this rule to the identical problem with which we are here confronted. An

act of the legislature imposing an excise on persons and companies generating electricity by hydro-electric and steam power was under consideration. The act contained the following proviso:

*"Provided, further,* That the provisions of this Act shall not apply to municipalities manufacturing or generating electricity for the use of its customers."

In answer to the contention that this was an unreasonable classification, Mr. Justice Parker, speaking for the court, said:

"So far as the exemption accorded municipalities is concerned, a municipality is an agency of the state, and its operations are conducted, not for private profit, but for the benefit of the public or its citizens. *Irvine v. Town of Greenwood,* 89 S. C. 511, 72 S. E. 228, 36 L. R. A. (N. S.) 363. Its property and business conducted by it are ordinarily not taxed at all; and legislation of the state taxing or exempting same from taxation is not open to the objection that it offends the equal protection clause of the Fourteenth Amendment. See *Village of Hardwick v. Wolcott,* 98 Vt. 343, 129 A. 159, 39 A. L. R. 1222 and note."

Appellant, in support of its position, cites three cases: *Texas Electric Service Co. v. Seymour,* 54 Fed. (2d) 97; *Great Northern Utilities Co. v. Public Service Commission,* 52 Fed. (2d) 802; *Los Angeles Gas & Electric Co. v. Los Angeles,* 241 Fed. 912 (affirmed 251 U. S. 32). In none of these cases was the taxing power involved. In each, it is held that the municipality could not, under the guise of an exercise of its police power, impose an oppressive regulation upon a competitor in a business in which the municipality itself was engaged. These cases do not go to the extent of holding that estoppel can be invoked against the state or a municipality in the legitimate and necessary exercise even of the police power.

The applicability of the doctrine of estoppel to the

exercise of the police power has been effectively denied in a number of cases. *New Orleans Gas Light Co. v. Drainage Commission of New Orleans,* 197 U. S. 453; *New York and N. E. Railroad Co. v. Bristol,* 151 U. S. 556; *Butchers' Union etc. Co. v. Crescent City etc. Co.,* 111 U. S. 746; *Stone v. Mississippi,* 101 U. S. 814; *Beer Co. v. Massachusetts,* 97 U. S. 25. In the latter case, it is said:

"If the public safety or the public morals require the discontinuance of any manufacture or traffic, the hand of the legislature cannot be stayed from providing for its discontinuance, by any incidental inconvenience which individuals or corporations may suffer. All rights are held subject to the police power of the State. . . .

"Whatever differences of opinion may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health, and property of the citizens, and to the preservation of good order and the public morals. The legislature cannot, by any contract, divest itself of the power to provide for these objects. They belong emphatically to that class of objects which demand the application of the maxim, *salus populi suprema lex;* and they are to be attained and provided for by such appropriate means as the legislative discretion may devise. That discretion can no more be bargained away than the power itself."

In *New York & N. E. Railroad Co. v. Bristol, supra,* the rule is stated as follows:

"It is likewise thoroughly established in this court that the inhibitions of the Constitution of the United States upon the impairment of the obligation of contracts, or the deprivation of property without due process or of the equal protection of the laws, by the States, are not violated by the legitimate exercise of legislative power in securing the public safety, health,

and morals. The governmental power of self-protection cannot be contracted away, nor can the exercise of rights granted, nor the use of property, be withdrawn from the implied liability to governmental regulation in particulars essential to the preservation of the community from injury.''

If this be true of the police power, the exercise of which depends upon the existence of government, it must be equally true of the taxing power, upon which the very existence of government depends. The doctrine of estoppel, applied to the power of taxation, is inconsistent with any conception of government, for, carried to the ultimate, it would result in the destruction of the state. *South Carolina v. United States,* 199 U. S. 437. See, also, *Everett v. Adamson,* 106 Wash. 355, 180 Pac. 144.

The judgment is affirmed.

BEALS, C. J., HOLCOMB, MILLARD, MITCHELL, and MAIN, JJ., concur.

TOLMAN, J., took no part.

STEINERT, J. (dissenting)—As stated in the majority opinion, this is a companion case to *Pacific Telephone & Telegraph Co. v. Seattle, ante* p. 649, 21 P. (2d) 287. All but two of this appellant's objections to the ordinance in question were disposed of in that case. My dissent in that case applies with equal force here. Since the majority opinion discusses and disposes of the two additional questions, my dissent is likewise extended, inasmuch as I disagree with the majority upon both questions.

The first question deals with appellant's rights under its existing franchise. The appellant here already had a complete and unqualified operating franchise from the city to engage in and carry on the business of sell-

ing and furnishing electric light and power for hire in the city of Seattle until March 14, *1952*. By virtue of that franchise, it had the express right to construct, maintain and operate its equipment and apparatus and to erect poles, wires and appurtenances for the distribution of electric light, heat and power in, over and under the streets and public places of the city. The grant was subject to repeal, change or modification for failure to *operate* in accordance with the provisions of the ordinance, or at all.

Relying upon that franchise, the appellant made large investments of money installing its plant and equipment and building up its service. It is now under the burden and duty of continuous operation. Its property is devoted to a public use. It can not cease its operations, nor has the city power to authorize it to cease doing business. *A fortiori*, the city can not alter or amend the contract to the detriment of the grantee by the imposition of additional burdens. *Pacific Tel. & Tel. Co. v. Everett*, 97 Wash. 259, 166 Pac. 650; *Hot Springs Electric Light Co. v. City of Hot Springs*, 70 Ark. 300, 67 S. W. 761; *Los Angeles v. Los Angeles Gas & Electric Corp.*, 251 U. S. 32, 64 L. Ed. 121; McQuillin, Municipal Corporations, Vol. 2, § 806.

In the *Everett* case, after stating that the municipality may, as a condition precedent to the use of its property, exact of the user such terms and conditions as it may deem necessary to impose, we said on p. 269:

"But it does not follow that the city may grant a franchise to a corporation to use its streets and other public places upon terms mutually agreed upon, and then afterwards during the life of the franchise annex additional burdens thereto without the consent of the grantee inconsistent with the rights granted. While it may not surrender the right of regulation necessary to the public health and safety, or the general taxing

power (Const., art. 7, § 4), it can make a valid and binding contract concerning the terms upon which the grantee may make use of public places; such a contract as cannot be changed or altered at the will of the city without the consent of the other party thereto.''

The crowning reason, in my opinion, for holding the ordinance inoperative and void as to this appellant is that it constitutes an unlawful exercise by the city of a governmental power in aid of its proprietary business. The city is a competitor of the appellant. Both are engaged in a similar business for profit. The appellant's franchise is not exclusive, hence it can not complain of competition. It may not even complain if the city should see fit to appropriate its property for public use by condemnation. But so long as appellant is permitted to function as a competitor, its property may not be taken from it without due process of law; and that, in effect, is just what the ordinance does. The validity of the tax must be determined by its true operation and effect on the basis of the results which follow its operation. *Aberdeen Savings & Loan Ass'n. v. Chase,* 157 Wash. 351, 289 Pac. 536, 290 Pac. 697, 71 A. L. R. 232; *Educational Films Corp. v. Ward,* 282 U. S. 379, 75 L. Ed. 400, 71 A. L. R. 1226.

In practical operation, the appellant must not only meet the competitive rates established by the city, but it must also comply with the regulations made by the department of public works regarding its rates. The city is under no such regulation, but has exclusive control of its own rates. If the appellant had no competition, it might secure from the state department the right to pass on to its customers the amount of the tax, upon a showing that its rate of return was insufficient to enable it to pay such tax. That attempt, however, would be futile so long as the city maintained a lower standard of rates. By the ordinance, the city has the

right of inspection of appellant's books of account. If the power to enforce such a tax as prescribed by the ordinance be granted to the city, then the amount thereof can be fixed as the city pleases, and at such a figure as it may determine from appellant's own books will result in the elimination of appellant as a competitor.

Contrary to the view of the majority, I think that the following cases are applicable and controlling here, both as authority and in reason: *Texas Electric Service Co. v. Seymour,* 54 Fed. (2d) 97; *Great Northern Utilities Co. v. Public Service Commission,* 52 Fed. (2d) 802; *Los Angeles Gas & Electric Co. v. Los Angeles,* 241 Fed. 912 (affirmed in 251 U. S. 32). In the case last cited, the district judge, on p. 921, said:

"I am, however, also firmly of the belief that until the city, by purchase, appeal to eminent domain, or otherwise, has lawfully and properly and justly eliminated competition, it must meet its competitors as any other private agency would be compelled to meet them, and must stand with them in the same relation to the law, and let its success be measured by its ability satisfactorily to serve the public, rather than by its power through the exertion of public functions to occupy a position of supremacy in the field which it deliberately has chosen to invade."

If this ordinance be upheld, it will result in appellant being required to pay to the city approximately one hundred and twenty thousand dollars a year out of its gross earnings for the privilege of transacting business; while the city, even under the majority opinion, is entirely relieved of that handicap. It would therefore profit directly at the expense of its competitor. The city, having entered into a field of competition in its proprietary capacity, enters it under the law of the survival of the fittest, and may not, therefore, draw sustenance from its competitor through an as-

sumption of public and governmental functions, to the strangulation of the one with whom it voluntarily competes.

I therefore dissent.