Argued November 9; affirmed November 23, 1937

STATE ex rel. HOOD RIVER HOSPITAL *v.*
EMPLOYEES' HOSPITAL ASS'N et al.

(73 P. (2d) 693)

*Wendell K. Phillips*, of Portland (Sheppard & Phillips, of Portland, on the brief), for appellant.

*L. A. Recken*, of Portland (Senn & Recken and W. E. Cameron, all of Portland, on the brief), for respondent.

LUSK, J. This case involves the interpretation of the language of bond given by the defendant (appellant), United States Fidelity and Guaranty Company a corporation, pursuant to the provisions of section 46-904, Oregon Code 1930 (amended by Laws 1933, Chap. 98), guaranteeing the due execution of certain contracts which might be entered into by the defendant Employees' Hospital Association, hereinafter called the Association, a corporation, organized to engage in the hospital business in this state.

The question is whether the particular contract which constitutes the basis of plaintiff's action falls within the fair intendment of the bond. The circuit court held that it does, and overruled a demurrer to the second amended complaint and, appellant refusing to plead further, entered a judgment in favor of the respondent, from which this appeal has been taken.

By the contract sued on the relator, Hood River Hospital agreed to and did, at the request of the Asso-

ciation, furnish hospital accommodations and services to sundry individuals to whom the Association was bound under a contract with their employer to furnish medical attention and hospitalization. The Association failed to pay the Hood River Hospital for rendering these services. It is the contention of the appellant that the protection of the bond extends no further than the beneficiaries of the services—the employers with whom the Association contracts and their employees—and not to the hospital which actually furnished the services that the appellant was organized to render.

The bond, which was executed by the appellant as surety, runs to the state of Oregon, and reads in part as follows:

"Now, THEREFORE, if the said EMPLOYEES HOSPITAL ASSOCIATION, a Hospital Association, shall faithfully perform each and all of its contracts and agreements of whatsoever nature or kind entered into in this state in pursuance of the conduct of such a Hospital Association business, said agreements and contracts being in compliance with the laws of the State of Oregon, relative to the conduct of such a Hospital Association business and shall faithfully pay each and every and all claims of whatsoever nature or kind arising out of or under or by virtue of said aforesaid contracts or agreements with the aforesaid parties against the said Hospital Association, and if said Hospital Association shall pay said claims at such time as they may become due and payable and in all respects and at all times conform to the laws of the State of Oregon relative to the transaction of a Hospital Association business as provided by the laws of the State of Oregon, then this obligation to be void; otherwise to remain in full force and effect."

Section 46-901, Oregon Code 1930, provides:

"Corporations organized under the general laws of this state may transact an hospital association busi-

ness as herein defined upon compliance with the provisions of this section; any corporation, association, society, firm, partnership, or individual, contracting or agreeing in this state with individuals, families, employees, associations, societies or with employers for the benefit of employees for the furnishing of medicine, medical or surgical treatment, nursing, hospital service, ambulance service, dental service, burial service, or any or all of the above enumerated services or any other necessary services, contingent upon sickness, accident, or death; or any corporation making such contracts, or agreements, outside of this state to be wholly, or in part, performed within this state, are hereby declared to be doing an hospital association business, and subject to the provisions of this act.''

Section 46-903 requires a hospital association to have a paid-up capital of $5,000, and section 46-904 reads:

''In addition to the capital stock provided for by section 3 of this act (46-903, Oregon Code), any corporation, association, society, firm, partnership or individual transacting business as herein defined shall file a surety bond or such other bond or securities in the sum of $10,000 as shall be acceptable and approved by the insurance commissioner as a guarantee of the due execution of the agreements to be entered into by such corporation, association, society, firm, partnership or individual.''

In 1933, the foregoing section was amended so as to require such bond ''as a guarantee of the due execution of the *contracts* to be entered into by such association, society, firm, partnership or individual, *in accordance with the provisions of this act*.'' Chap. 98, Laws 1933, section 46-904, Oregon Code, 1935 Supplement. The only changes made by the amendment are, that the word ''contract'' replaces the word ''agreement'' and the phrase ''in accordance with the provisions of this act'' is added.

The contracts, the due execution of which under the terms of the statute the appellant has guaranteed, are those made by the Association, "with individuals, families, employees, associations, societies, or with employers for the benefit of employees for the furnishing of medicine, medical or surgical treatment, nursing, hospital services, ambulance services, dental services, burial services, etc.".

■ It is obvious that the statute exacting the bond looks to the protection of persons who become members of the Association in order to obtain the benefit of a sort of hospital and medical insurance. Its purpose is to guarantee the fulfillment of the Association's engagements in this respect. Now, the Association has no hospital of its own. Indeed, we were told on the argument that none of these associations maintain hospitals. They are not authorized to practice medicine. They delegate to other agencies the actual discharge of the functions with which a state law has invested them. That being so, if these agencies are not compensated under their contracts with the Association, it is reasonable to assume that they will cease to undertake the performance of these services, the Association will be wholly without the means to carry out its agreements with its members and their employers, and the latter will lose the benefits which they hoped to gain by joining the Association.

■ In interpreting the statute, we are to place upon it the meaning which will make it operative and carry out, so far as possible, the intention of the legislature, and in this process of ascertaining the legislative intention we may consider the context, the subject matter, the circumstances under which it was enacted, the necessity for the law, the mischief sought to be remedied and the object to be attained: *Union Fisherman's Com-*

*pany v. Shoemaker,* 98 Or. 659, 671 (193 P. 476, 194 P. 854); *State v. Gates,* 104 Or. 112, 123 (206 P. 863); *Othus v. Kozer,* 119 Or. 101, 106 (248 P. 146).

■ It is to be remembered also that this undertaking was executed for a money consideration by a corporation adopting such business for its own profit, and, therefore, is to be construed most strongly against the surety and in favor of the indemnity which the obligee has reasonable grounds to expect, and that if the bond is fairly open to two constructions, one which will uphold and the other defeat the claim of the obligee, that which is most favorable to the obligee will be adopted: *Title and Trust Company v. United States Fidelity and Guaranty Company,* 138 Or. 467, 478 (1 P. (2d) 1100, 7 P. (2d) 805); *Columbia County v. Consolidated Contract Company,* 83 Or. 251, 268 (163 P. 438).

■ With these principles of construction in mind, we think that the language of the statute, justly interpreted, is broad enough to include contracts which the Association makes with others for the furnishing of hospital and medical services to the Association's members. Entering into such contracts is assuredly doing a hospital business; and it is contracts which constitute doing a hospital business that are required to be guaranteed by section 46-904 as amended.

We are, therefore, of the opinion that the demurrer to the second amended complaint was rightly overruled.

The appellant argues that should the respondent's contention be approved then the statute means that all the contracts entered into by the Association, of whatever nature, must be guaranteed and that this would render the statute unconstitutional as depriving the appellant of the equal protection of the laws, in violation of Article I, section 20, of the Oregon Con-

stitution. But this does not necessarily follow. We decide only what is necessary to be decided by the record before us; namely, that where a hospital association substitutes another agency for itself to execute the powers conferred by law, the agreement of the association to pay such agency for the services rendered by it to members of the association, is a contract, the due execution of which is guaranteed by the bond required by the statute.

The language of the bond is broader than that of the statute. The appellant has argued that its liability is measured by the statute requiring the bond and that the extra-statutory stipulations are to be rejected as surplusage. In view of the construction of the statute which we have adopted, we find it unnecessary to express any opinion on that question.

■ Under the authority conferred by section 46-134, as amended by 1931 Laws, Chap. 355, the court awarded attorney's fees of $250. The appellant complains of this allowance as unreasonable and excessive. The respondent, on the other hand, asks us to allow an additional fee for the services of the attorneys in the supreme court. In *Spicer v. Benefit Association of Railway Employees,* 142 Or. 574, 604 (17 P. (2d) 1107, 21 P. (2d) 187, 90 A. L. R. 517), where the amount involved was $2,700 and an attorney's fee of $300 had been awarded by the circuit court, an additional fee of $150 was allowed in this court on appeal. The court said:

"The transcript of evidence was short; the assignments of error were few in number; the questions of law were not difficult; the amount involved was $2700; and the presentation of respondent's defense to this court displayed no unusual labors. It seems to us that in the presentation of any cause of ordinary importance before this court an attorney's fee of $150 is a reasonable amount."

In that case, the labors of the attorneys included a trial before court and jury. In this case there has been no trial of any question of fact, and the case has been disposed of on a demurrer to the complaint. The amount of the judgment is $376.32 and interest. When the circuit court announced its decision overruling the demurrer, counsel for the appellant informed the court that judgment might be entered as he intended to appeal to the supreme court. With this knowledge, it may be assumed that the circuit court in fixing the amount of the attorney's fee took into consideration the services which respondent's counsel would be required to render in the supreme court. Having in view the amount in controversy, and the labors performed as disclosed by the record before us, we are of the opinion that the sum of $250 is a reasonable amount to be allowed respondent's counsel as attorney's fee, for their services in both the circuit court and the supreme court.

The judgment is affirmed.

BEAN, C. J., and RAND and BAILEY, JJ., concur.