Argued March 21; modified May 9; rehearing denied June 1, 1944

# FOX *v.* GALLOWAY ET AL.
# SEDLOCK ET AL. *v.* GALLOWAY ET AL.

(148 P. (2d) 922)

Before BAILEY, Chief Justice, and ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*James G. Smith,* and *George William Neuner,* Assistant Attorneys General (George Neuner, Attorney General, on the brief), for appellants.

*Paul R. Harris,* of Portland, for respondents.

BAILEY, C. J.  These two suits were instituted to enjoin the individual members of the state tax commission of Oregon, the sheriff of Multnomah county and the chief of police of the city of Portland from enforcing, because of the alleged unconstitutionality thereof, chapter 220, Oregon Laws 1943, imposing a privilege tax on the owners of certain designated coin-in-the-slot-operated mechanical devices.  The sheriff and the chief of police were not served with summons and made no appearance in either case.  As to those officers both suits were dismissed.

Demurrers to the complaint in each suit were overruled, and upon failure of the defendants to plead further decrees were entered in favor of the respective plaintiffs, from which decrees the defendants have appealed.  The two cases were consolidated in this court for the purposes of briefing and argument.

In one of the cases Sol Fox, doing business as S. Fox and Company, is the plaintiff.  He alleges that he is the owner and operator of thirty-eight coin-in-the-slot-operated mechanical devices designed to provide music and ranging in value from fifty dollars to six hundred dollars each, which machines are "located in numerous and divers places of business in the city of

Portland, Oregon"; that such machines are moved from one location to another on an average of five times a month; and that he is also the owner of "numerous other coin-in-the-slot-operated mechanical devices, of divergent values, designed to provide music, which he displays for leasing and selling purposes in his headquarters, place of business and store room" in Portland.

S. A. Sedlock, doing business as S. A. Sedlock & Company, is the plaintiff in the other case. He alleges that he is the "owner and operator or displayer of fifty coin-in-the-slot-operated mechanical games or devices designed to be played for amusement, other than music, only, and to return to the player thereof no coins, tokens or merchandise"; that twenty-three of those devices have a reasonable market value of five hundred dollars each, and twenty-seven, of seventy dollars each; that those mechanical devices or games are located "in numerous and divers places of business in the city of Portland, . . . where they are left upon a concession basis with individuals operating said divers places of business and who display or operate said devices"; that the changes of location of those devices total, on the average, three hundred a year; and that Sedlock is also the owner of numerous other similar mechanical devices which he displays for leasing and sale purposes in his place of business in Portland, Oregon.

Except as to the description of the devices owned by the respective plaintiffs, the allegations of the two complaints are almost identical, as are the charges of unconstitutionality of the act involved.

Chapter 220, Oregon Laws 1943, provides in part as follows:

"Section 1. There hereby is imposed on every coin-in-the-slot-operated music and amusement de-

vice of every description or designation, a privilege tax. The amount of such tax shall be as follows:

"(a) On every coin-in-the-slot-operated mechanical game or device designed to be played for amusement, other than music, only and to return to the player thereof no coins, tokens or merchandise, an annual tax of fifty dollars ($50) each.

"(b) On every coin-in-the-slot-operated mechanical device which is designed to provide music, an annual tax of ten dollars ($10) each.

"(c) On every coin-in-the-slot-operated mechanical device which is designed to be played for amusement and which may be completely operated by the insertion of one penny only and not otherwise, an annual tax of one dollar ($1).

"Section 2. This act shall not apply to coin-in-the-slot-operated devices maintained by any public utility for furnishing service of the public utility, nor to any device which is designed and used strictly as a vendor of merchandise or service and without the elements of chance or prize involved.

"Section 3. The tax year, for the purposes of this act, shall begin on July first and end on June 30.

"Section 4. The tax imposed by this act shall be paid to the state tax commission by the owner of the property subject to the tax, before such property shall be displayed or operated in this state. A separate and individual tax shall be paid on each device or game described in section 1 hereof and the taxpayer shall, at the time such tax is paid, designate and identify to the commission the premises where such device or game is to be displayed or operated.

"Section 5. Upon payment of the tax hereby imposed the state tax commission shall issue to such taxpayer a receipt therefor, which receipt shall bear on its face the address or other designated identification of the premises where the particular device is to be displayed or operated, be printed on red paper, and be not more than two inches square.

"Section 6. It hereby is made unlawful for any person to display in any public or private place of

amusement or business in this state any property subject to the tax imposed by this act that does not have affixed thereon, in a conspicuous place, the receipt of the state tax commission for the payment of such tax. It shall be unlawful to display or operate any device described in section 1 hereof in, at or on any other premises than the premises set forth on the face of the state tax commission receipt affixed thereto."

Section 7 of the act provides that all property subject to the tax which is displayed or operated in violation of any of the provisions of the act is "declared to be contraband property, and the same shall, on and after July 1, 1943, be forfeit to the state of Oregon and as such subject to immediate seizure."

The tax commission is required, upon the seizure of any property subject to the tax, to give notice of such seizure by publication in a newspaper and "to fix in such notice a day certain, not less than ten days nor more than twenty days thereafter, when the owner of such property may appear before the commission to show cause, if any, why such property should not be forfeit to the state of Oregon". If the commission finds, after a hearing, that "such property was displayed or operated in violation of this act," it is required to declare the property forfeited and to sell it: § 8.

All moneys received from the sale of property so forfeited and all moneys received as taxes under the act, after deducting expenses of administering the act, are required to be paid by the state tax commission to the state treasurer: § 9. Violation of any provision of the act is declared to be a misdemeanor and is punishable by a fine of not less than fifty dollars nor more than five hundred dollars or "by imprisonment in the county

jail for not less than thirty days nor more than six months, or shall be punished by both such fine and imprisonment'': § 10. The tax commission ''is authorized to promulgate rules and regulations and to employ agents necessary for the administration and enforcement'' of the act: § 13. The last two sections of the act thus provide:

> ''Section 15. The tax imposed by this act shall be in addition to any and all other taxes or fees imposed upon the same property by any municipality of this state or by the United States government.
>
> ''Section 16. Nothing in this act shall be construed as licensing, authorizing, or legalizing the ownership, possession, display or operation, in violation of any law of this state, of any of the property herein taxed.''

■■ Before discussing the specifications of unconstitutionality argued by the plaintiffs we deem it proper to refer to certain fundamental principles governing the interpretation of legislative enactments. The cardinal rule of statutory construction is to ascertain the meaning of the legislature and give it effect, if such meaning is constitutional. In determining the intent many things are taken into consideration: the language used, the object to be accomplished, whether a literal interpretation of the language will lead to an impossibility or an absurdity, the history behind the act, and numerous other matters, no one of which is absolutely controlling as to the legislative intent. It is from a combination of all these that the intent is deduced: *Union Fishermen's Co. v. Shoemaker,* 98 Or. 659, 193 P. 476, 194 P. 854; *State v. Gates,* 104 Or. 112, 206 P. 863; *Calder v. Orr,* 105 Or. 223, 209 P. 479; *State ex rel. Hood River Hospital v. Employees' Hospital Association,* 157 Or. 618, 73 P. (2d) 693.

■ If the language is plain and unambiguous, if it can be given but one meaning, and that meaning does not lead to an impossibility or an absurdity such as the legislature could not be supposed to have intended, the court must give effect to that meaning if constitutional, even though the result may be, in the court's opinion, harsh, unjust or mistaken in policy: *Public Service Commission v. Pacific Stages, Inc.*, 130 Or. 572, 281 P. 125; *State v. Tollefson*, 142 Or. 192, 16 P. (2d) 625; *Anderson v. Thomas*, 144 Or. 572, 26 P. (2d) 60.

■ When, however, a literal application of the language produces an absurd or unreasonable result, it is the duty of the court to construe the act, if possible, so that it is a reasonable and workable law and not inconsistent with the general policy of the legislature: *Othus v. Kozer*, 119 Or. 101, 248 P. 146; *State v. Hay*, 132 Or. 223, 283 P. 753; *Portland Van & Storage Co. v. Hoss*, 139 Or. 434, 9 P. (2d) 122, 81 A. L. R. 1136. "It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers": *Holy Trinity Church v. United States*, 143 U. S. 457, 36 L. E. 226, 12 S. Ct. 511; *Staples v. Senders*, 164 Or. 244, 261, 96 P. (2d) 215, 101 P. (2d) 232.

■ Every statute is presumed to be constitutional, and all doubt must be resolved in favor of its validity. Therefore, he who assails an act has the burden of establishing its invalidity: *State v. Bunting*, 71 Or. 259, 139 P. 731, L. R. A. 1917C, 1162, Ann Cas. 1916C, 1003; *McPherson v. Fisher*, 143 Or. 615, 23 P. (2d) 913; *Semler v. Oregon State Board of Dental Examiners*, 148 Or. 50, 34 P. (2d) 311.

The act here in question, imposing a tax on certain designated coin-in-the-slot-operated devices, requires

that such tax be paid to the state tax commission by the owner of the property subject to the tax "before such property shall be displayed or operated in this state": § 4. Section 6 of the act makes it "unlawful for any person to display in a public or private place of amusement or business" any such device "that does not have affixed thereon" the tax receipt issued by the commission. It is argued by the plaintiffs that in view of the foregoing language of the statute the coin-in-the-slot-operated devices owned by the plaintiffs and on "display" in their places of business for the purpose of lease or sale are as much subject to the tax as are similar devices operated in places of amusement, and that, therefore, the tax imposed is in fact a property, and not a privilege, tax.

██ It may be assumed, for the purpose of argument, that if the tax were imposed upon devices displayed merely for sale or lease, it would be in effect a tax on property, giving rise to serious question as to the constitutionality of the act. The legislature, however, in our opinion, intended to impose the tax on only such devices as are operated or displayed for operation. The words "display" and "displayed" as used in the act should be construed with reference to the words "operate" and "operated", with which they are therein associated. As so construed they refer only to such devices as are displayed for the purpose of operation. The act, in our opinion, is susceptible of this construction, and inasmuch as such an interpretation avoids the challenge of unconstitutionality, it becomes our duty to adopt it: *Eastern & Western Lumber Co. v. Patterson,* 124 Or. 112, 258 P. 193, 264 P. 441, 60 A. L. R. 528; *Camas Stage Co., Inc. v. Kozer,* 104 Or. 600, 209 P. 95, 25 A. L. R. 27.

■ The plaintiffs contend that the act is uncertain and indefinite as to who shall pay the tax. They rely principally on the case of *Sheppard v. Giebel*, (Tex. Civ. App.) 110 S. W. (2d) 166, which held that an act levying an annual occupation tax on coin-operated vending machines was so indefinite and uncertain concerning who was to pay the tax as to be unenforceable. The statute there under consideration provided that the tax should be collected from the owner, and defined "owner" as any person, firm or corporation "having the care, control, management or possession" of such a machine, or any person, firm or corporation "who exhibits or permits to be exhibited, in his or its place of business, or upon premises under his or its control," any such machine.

The Oregon act, however, does not attempt to define "owner" as did the Texas statute, and therefore the word must herein be accorded its usual meaning. This leaves no vagueness or uncertainty as to who is required to pay the tax. The prohibition against displaying any mechanical device subject to the tax which does not bear the receipt of the state tax commission does not mean that the tax should be paid and the receipt obtained by any one other than the owner of such device.

■ The complaints in the two cases allege that the coin-operated devices owned by the plaintiffs which are being operated commercially are located in numerous places of business in the city of Portland and are moved from time to time during the year to other locations. The plaintiffs argue that inasmuch as the statute provides that the owner of such a device must, at the time of paying the tax thereon, designate the premises where the machine is to be displayed or operated and the receipt issued by the commission for the tax

must also designate the location of the device, the owner is obliged to pay the tax again every time the machine is moved to a new location. This requirement, the plaintiffs assert, results in a multiplied tax that is unreasonable and confiscatory. The law, however, exacts the payment of only one tax annually on each device. The owner of the machine may, at the time of paying the tax, designate to the commission more than one location where the device will be displayed or operated during the year. And the commission likewise may specify in the receipt as many different locations as space permits.

The word "premises" may be construed not only in the singular, but in the plural as well, as the context may indicate. Moreover, the tax commission, by § 13 of the act, is authorized "to promulgate rules and regulations and to employ agents necessary for the administration and enforcement of this act". In pursuance of the authority so granted it, the commission on June 9, 1943, the effective date of the act, promulgated rules and regulations, one of which reads as follows:

> "In any case where a device on which the tax has been paid is moved from the location described on the receipt to a new location, provision will be made by the commission for correcting the receipt so as to show the new location."

■ To adopt this rule was within the power of the commission.

■ Chapter 220, *supra,* imposes not a property tax, but a privilege tax upon the right to operate or display for operation a coin-in-the-slot mechanical device such as therein designated; and payment of the tax is made a condition to the exercise of such right: 33 Am. Jur.,

Licenses, page 326, § 3; 26 R. C. L., Taxation, page 35, § 19.

One of the plaintiffs' principal contentions is that the tax is not uniform and equal, and that it is therefore violative of § 32, article I, of the Oregon constitution, and violative likewise of § 1 of the fourteenth amendment to the federal constitution, which guarantees to every person within the jurisdiction of the state the equal protection of its laws. In this connection, the plaintiffs assert that the statute in question is discriminatory in the following respects: "(a) in that it attempts to tax only machines vending music or amusement which have the coin-in-the-slot feature, and fails to tax machines vending the same class of merchandise without such feature; and (b) . . . in that it attempts to tax coin-in-the-slot mechanical devices which dispense music or amusement and does not tax other coin-in-the-slot devices which dispense commodities other than the two last mentioned."

Section 32 of Article I of the state constitution, as amended in 1917, provides that " . . . all taxation shall be uniform on the same classification of subjects within the territorial limits of the authority levying the tax." By this section the legislature is granted specific constitutional authority to classify subjects for the purpose of taxation, provided, that the classification is reasonable and the tax applies uniformly to all subjects within the class: *Standard Lumber Co. v. Pierce,* 112 Or. 314, 228 P. 812; *Portland Van & Storage Co. v. Hoss,* supra; *Safeway Stores v. City of Portland,* 149 Or. 581, 42 P. (2d) 162. A legislative classification for the purpose of taxation will not be held invalid unless it is plainly and manifestly arbitrary and without any reasonable basis: *State ex rel. Veatch*

*v. Franklin,* 163 Or. 500, 98 P. (2d) 724; *Quong Wing v. Kirkendall,* 223 U. S. 59, 56 L. E. 350, 32 S. Ct. 192. See also *State ex rel. Evans v. Kozer,* 116 Or. 581, 242 P. 621, and *Portland Van & Storage Co. v. Hoss,* supra. This court in *Standard Lumber Co. v. Pierce,* supra, after stating that uniformity of taxation was required, observed:

> "This does not mean that the subjects of the class selected for taxation shall be precisely alike in all respects, but rather that they must be alike in the essential particulars which induced the legislature to include them in one classification. All within the class must be susceptible of like treatment and all the constituents of the class must be affected alike under like circumstances."

■ Elsewhere in that opinion it is said that the supreme court of the United States "has declared repeatedly that the [fourteenth] amendment does not prevent the classification of subjects for taxation; that in taxation there is a broader power of classification than in some other exercises of legislation; and that the requirements of the equality clause of the fourteenth amendment are met if the state statute operates 'equally and uniformly upon all persons in similar circumstances' and does not create 'clear and hostile discriminations between particular persons and classes.'"

The supreme court of the United States in *State Board of Tax Commissioners v. Jackson,* 283 U. S. 527, 75 L. E. 1248, 51 S. Ct. 540, 73 A. L. R. 1464, in upholding the chain-store tax law of the state of Indiana, expressed its views in relation to the classification of subjects for taxation, thus:

> "The principles which govern the decision of this cause are well settled. The power of taxation is fundamental to the very existence of the government

of the states. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. [Authorities.] The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, [citation,] or if any state of facts reasonably can be conceived to sustain it. [Authorities.] As was said in Brown-Forman Co. v. Kentucky, *supra*, [217 U. S. 573, 54 L. E. 887, 30 S. Ct. 578] at p. 573:

" 'A very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.'

"It is not the function of this court in cases like the present to consider the propriety or justness of the tax, to seek for the motives or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the legislature if there are substantial differences between the occupations separately classified. Such differences need not be great. The past decisions of the court make this abundantly clear."

■ Section 2 of chapter 220, *supra*, exempts from the tax coin-in-the-slot-operated devices maintained by any public utility for furnishing service of the public utility and any device which is "designed and used strictly as a vendor of merchandise or service and with-

out the elements of chance or prize involved". The question here presented is whether or not the legis-lature acted arbitrarily or capriciously in imposing a tax on the right to operate coin-in-the-slot devices for furnishing music and amusements and not on the right to operate other coin-in-the-slot machines. The plain-tiffs assert that there is not such a difference between vending merchandise and furnishing music or amuse-ment as to warrant singling out for taxation machines designed for the latter use and exempting others.

Mechanical devices on which the tax is imposed are those which provide entertainment by means of games or music. They do not vend anything that could be considered tangible. It is obvious that there is a substantial difference between providing entertainment and selling merchandise or essential services: *Shep-pard v. Giebel,* supra. And that difference is a reason-able ground for the classification made by the legis-lature.

South Carolina enacted a statute imposing a tax of $15 a year on coin-in-the-slot mechanical devices for providing amusement or music and a tax of $10 a year on coin-in-the-slot machines vending any tangible ar-ticle of merchandise. In *Carolina Music Company v. Query,* 192 S. C. 308, 6 S. E. (2d) 473, the plaintiff, which sold or operated only musical machines, attacked the constitutionality of the act on the ground that it discriminated unlawfully in favor of merchandise-vending machines. The court upheld the distinction and classification made by the act, observing:

"Yet these are precisely the type of distinctions which the law is often called upon to make. 'It is only a difference in numbers which marks the mo-ment when day ends and night begins, when the dis-abilities of infancy terminate and the status of legal

competency is assumed. It separates large incomes which are taxed from the smaller ones which are exempt, as it marks here the difference between the proprietors of larger businesses who are taxed and the proprietors of smaller businesses who are not.' Carmichael v. Southern Coal & Coke Co., 301 U. S. 495, 57 S. Ct. 868, 873, 81 L. Ed. 1245, 109 A. L. R. 1327.''

■ It is also argued by the plaintiffs in the case at bar that the act here in question is unconstitutional in that it imposes a tax on coin-in-the-slot ''music and amusement devices'' and does not tax merchants selling the same kind of entertainment by other means than coin-operated machines. In support of that contention they rely principally on the cases of *City of Seattle v. Dencker*, 58 Wash. 501, 108 P. 1086, 28 L. R.A. (N. S.) 446, 137 Am. St. Rep. 1076, and *Ex parte Richardson*, 170 Cal. 68, 148 P. 213. In *City of Seattle v. Dencker*, supra, it was held that an ordinance of the city of Seattle imposing a tax on coin-in-the-slot-operated machines for the sale of cigars and not imposing a license tax on the sale of cigars by manual delivery was unjustly discriminatory and unconstitutional because there was no reasonable distinction between the two methods of sale to justify taxing one and exempting the other. That decision was rendered in 1910. It is very doubtful that the supreme court of the state of Washington would at this time follow its ruling therein, for in the later case of *Austin v. City of Seattle*, 176 Wash. 654, 30 P. (2d) 646, 93 A. L. R 203, the court referred to the fact that the appellants then before it relied very largely upon *City of Seattle v. Dencker*, supra, and then stated:

''. . . Whether that case has been modified by more recent cases, based upon the growth and devel-

opment of modern business methods, we need not stop to decide, because it is clearly distinguishable from this case.''

And in the more recent case of *Texas Co. v. Cohn,* 8 Wash. (2d) 360, 112 P. (2d) 522, the court, after discussing *City of Seattle v. Dencker,* supra, and a case decided by the United States supreme court, stated:

''. . . As we have pointed out, those two cases are clearly distinguishable from the case at bar. Moreover, later decisions of the courts by which they were decided have, to say the least, not strengthened their positions as authorities. In the chain store cases and in Puget Sound Power & Light Co. v. Seattle [172 Wash. 668, 21 P. (2d) 727; affirmed, 291 U. S. 619, 54 S. Ct. 542, 78 L. E. 1025], both the United States supreme court and this court upheld classifications for excise tax purposes which were based solely on a difference in the method of operation of a particular kind of business.''

There is a marked distinction between the legislation involved in the case of *City of Seattle v. Dencker,* supra, and the act here under consideration. In the former case it was ruled that the sale of cigars by means of a mechanical device was in direct competition with the business of selling cigars by manual delivery, whereas in the suits before us no such direct competition is involved.

*Ex parte Richardson,* supra, turned upon the constitutionality of a city ordinance imposing a tax on dealers vending articles of merchandise by means of a coin-in-the-slot machine but exempting from the tax those selling the same articles ''through the medium of a clerk, salesman or other human agency''. The ordinance was held unconstitutional, largely on the authority of *City of Seattle v. Dencker,* supra. The court

stated that the tax imposed was really based solely on the method used by the merchant and not on the business.

The two cases last mentioned do not seem to have been followed in other states where the question of imposing an occupation tax on the use of coin-in-the-slot vending machines has been decided. See, in this regard, the following cases: *Ex parte Walker,* 121 Tex. Cr. 145, 52 S. W. (2d) 266; *Ex parte Day,* 127 Tex. Cr. 367, 76 S. W. (2d) 1060, and 127 Tex. Cr. 379, 76 S. W. (2d) 1066; *Snyder v. Maxwell,* 217 N. C. 617, 9 S. E. (2d) 19; *Edmonds v. City of St. Louis,* 348 Mo. 1063, 156 S. W. (2d) 619; *Robey v. Boersma,* 181 Md. 325, 26 A (2d) 820, 29 A. (2d) 827, 146 A. L. R. 687; *Dunlap v. State,* 16 Ala. App. 440, 78 So. 638.

In some of the foregoing cases it is pointed out that the selling of merchandise by means of vending machines is fundamentally different from the usual method of selling through human agency; that automatic vending machines may be and often are located on premises of others than the owners of such machines, as for example, in arcades, hotel lobbies, restaurants and similarly frequented places; and that they are operated without personal attention. Those and similar cases are not here controlling, in any event, for the reason that in the suits before us we are not concerned, as we have hereinabove stated, with the constitutionality of a privilege tax on merchandise-vending machines, inasmuch as the statute here involved deals only with coin-operated devices for providing music and amusement.

In our opinion, the legislature was not prohibited by any provision of either the state constitution or that of the United States from imposing the tax here in

question. It applies uniformly to all who are engaged in the same kind of business. The classification of the subjects for taxation is not arbitrary or capricious and is based on reasonable distinctions.

All coin-in-the-slot machines which are subject to the tax and which are displayed or operated without prior payment of the tax or without receipt for such payment thereto affixed are declared, by § 7 of chapter 220, *supra,* to be "contraband property and subject to immediate seizure". By § 8 the commission is required, upon the seizure of any such property, to give notice of a hearing, at which hearing the owner may appear and show cause why the property should not be forfeited. And in the event that the commission finds, upon such hearing, that the coin-in-the-slot device seized has been displayed or operated in violation of the statute, it is required to declare the same forfeited to the state; "otherwise it shall be returned to the owner thereof upon proof of ownership and upon payment of the tax imposed by this act for the current year." Section 9 requires that the proceeds of such sale, along with all moneys received as taxes under the act, be paid over to the state treasurer.

We are unable to give any sensible construction to the foregoing provisions. They first declare that property subject to the act, which is displayed or operated in violation of any provision of the act, shall be forfeited to the state and subject to immediate seizure, and, later, that if the commission shall find that any property which has been seized was not displayed or operated in violation of the act, the same shall be returned to the owner upon payment of the tax for the current year. Four things are made unlawful by the act: first, the display and operation of coin-in-the-slot

devices subject to the act which do not have affixed thereon the receipt of the state tax commission for payment of the tax; second, the display or operation of such property at any other premises than the premises set forth on the face of the receipt; third, the alteration or change of a receipt in an attempt to avoid payment of the tax; and fourth, attempting to avoid payment of the tax by the use of a false receipt. Each and every one of those offenses, with the possible exception of the second, necessarily implies that the tax imposed by the law has not been paid.

The commission is not authorized to return the property to the owner, if the tax has not been paid, for failure to pay the tax is a violation of the statute. A finding by the commission, after a hearing with respect to property that has been seized, that the property was not displayed or operated in violation of the act, necessarily means either that the property in question is not subject to the tax, or that the tax has been paid. Yet the legislature has ordained that when such a finding has been made the seized property shall be returned to its owner, but only upon payment of a tax, which tax, however, the commission has found has already been paid or is not due. We are constrained to assume, out of respect to the legislature, that no such result was intended, but, if that be the case, then there is no meaning that we can give to the provision for return of the property, without legislating judicially.

All the provisions of §§ 7 and 8 are so intimately connected, one with another, that it is impossible to eliminate any of them without striking down all. The provision relating to the return of seized property to the owner renders both sections so indefinite and self-contradictory that they must be held impossible of enforcement and void.

The invalidity of those two sections, however, does not nullify the remainder of the act. Sections 7 and 8 of chapter 220, *supra*, are not so integral a part of the act that their elimination therefrom would render ineffectual the remainder of the statute. The result would be analogous to retaining the valid parts of a statute upon rejecting other parts as unconstitutional. In *Standard Lumber Co. v. Pierce*, 112 Or. 314, 340, 228 P. 812, this court said:

> "It is a familiar principle that a statute may be constitutional in one part and unconstitutional in another part. In such a case, if the invalid part is severable from the rest, the portion which is constitutional may stand, while that which is unconstitutional is stricken out and rejected."

See also: *United Artists Corporation v. Thompson*, 339 Ill. 595, 171 N. E. 742; *Holloway v. Jordan*, 170 Miss. 99, 154 So. 340; and *Wadsworth v. Brigham*, 125 Or. 428, 467, 259 P. 299, 266 P. 875.

The statute under consideration makes it unlawful for any person to operate or display for operation any coin-in-the-slot machine subject to the act without having-affixed thereon the receipt of the state tax commission for payment of the tax imposed. Violation of the act is made punishable by fine or imprisonment or both. It is not an uncommon practice for law-making bodies to declare unlawful the carrying on of a business without having first paid a privilege or occupation tax, and to provide for enforcing payment of the tax by fine or imprisonment or both: *State v. Dix*, 159 Mo. App. 573, 141 S. W. 445; *City Council v. Ashley Phosphate Co.*, 34 S. C. 541, 13 S. E. 845; *Holton v. Tatlock*, 77 Kan. 376, 94 P. 204; *Ruggles v. State*, 120 Md. 553, 87 A. 1080; *Rosenbloom v. State*, 64 Neb. 342, 89 N. W.

1053, 57 L. R. A. 922; *United States v. Northwestern Development Co.*, 203 F. 960. The punishment by fine or imprisonment or both, provided in the act before us, is an adequate means of enforcing the law; and accordingly the inclusion of the forfeiture provisions in the statute can not be said to have induced the legislature to enact the remaining parts of the statute.

Chapter 220, Oregon Laws 1943, is therefore invulnerable to the challenges of its constitutionality made in the suits now under consideration, except §§ 7 and 8 thereof, providing for the seizure and sale of coin-in-the-slot devices subject to the act, which latter sections are hereby declared unconstitutional for the reasons hereinabove stated.

The decrees appealed from are affirmed to the extent that they enjoin the defendant tax commissioners from seizing and disposing of the mechanical devices owned by the plaintiffs. In all other respects the decrees are reversed. The defendants will recover costs in this court.